# UNITED STATES TRUST CO. OF NEW YORK

*v.*

# ANNA D. LEE.

1. CORPORATIONS—*power of foreign, to hold real estate.* A foreign corporation can not purchase and hold real estate in this State beyond what is necessary for the transaction of its business or the collection of its debts, either for its own benefit or in trust for others.

2. A corporation created by the laws of New York, with power to act as trustee in carrying out the provisions of a will devising real estate, was, by the courts of that State, appointed such trustee, under which the corpora-

tion took the charge and management of all the real estate devised, including real estate in Illinois: *Held*, on a bill filed in Illinois by such corporation to be appointed trustee to carry out the provisions of the will, that it could not hold real estate in trust in this State, and that the bill was properly dismissed.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Mr. OBADIAH JACKSON, for the appellant.

Mr. W. G. RANDALL, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears, from the record, that David Lee, a citizen of New York, died, having executed his will, vesting authority in certain trustees named in the will, to whom he devised his property, real and personal, to pay the income from the same to his children, during their lives, and to divide the principal at their deaths amongst such persons as the children should, by will, respectively, designate, and should they die intestate, then to the legal heirs of such children.

In March, 1870, Mr. Fales, the surviving trustee, resigned his position as such, whereupon the Supreme Court of New York, after accepting his resignation, appointed complainant a trustee in his stead. The widow and children of Lee not only assented to the appointment, but requested that it should be made. By the statute of New York such a corporation may be appointed such a trustee.

Mr. Lee, at the time of his death, owned a large amount of property in New York, also large and valuable real estate in the vicinity of Chicago, in this State. This real estate is vacant and unproductive. Complainant has had the charge and management of the estate since 1870; has paid taxes on the same, and being desirous of selling a portion of this property, complainant applied to be appointed trustee by the circuit court of Cook county, but that court, upon the ground that complainant was a foreign corporation, having been created by

the legislature of New York, and unable to hold lands in this State, refused to make the appointment, and dismissed the bill. From that decree this appeal is prosecuted, and errors are assigned, and the case is submitted, by stipulation of counsel, on appellant's abstracts and briefs.

The question, whether foreign corporations may purchase and hold real estate in this State beyond what is necessary for the transaction of their business or in collection of their debts, was presented to this court in the case of *Carroll* v. *East St. Louis,* 67 Ill. 568. It was held in that case, that such a power did not exist, it being contrary to a sound public policy. A petition for a rehearing was presented, and after mature consideration it was denied. The question was again presented in the case of *Starkweather et al.* v. *The American Bible Society,* 72 Ill. 50, which involved the devise of real estate lying in this State. The same rule was announced as in *Carroll's case.* In that, as in the former case, a petition for a rehearing was presented, but, on mature consideration, was denied. Nor are we now disposed to change the rule announced in those cases, but must regard the rule as settled in this court, and must leave it to the General Assembly to make any change they may deem for the best interests of our community, when it shall be demanded.

But, it is urged that this case is clearly distinguishable from the cases we have named, inasmuch as the complainant would, whilst taking the fee to the premises, only hold it in trust for the purposes of the will and for the use of the children of Lee. Conceding this to be true, in what does it differ from the other cases? The law is well settled that a corporation and the officers who govern and control it and its operations, are only trustees for the benefit of the stockholders, creditors and others having an interest in its affairs. Such bodies are largely under the control of courts of equity, on the principle that they are trustees; and if appellant should be appointed a trustee for this property, the trust would devolve upon them, as does the holding of their corporate property—the one they would hold for the use of the heirs, the other for the use of the stockholders.

No difference in principle is perceived in the two classes of cases.

. . To permit such bodies to hold lands in trust by deed of conveyance or by devise, would be to accomplish the same, and precisely the same thing as to permit the corporation to receive the property without declaring the trust in the deed or will. In this latter mode, the law creates and implies a trust that it is held for the use of the shareholders, and requires them to account to the shareholders for all profits arising from the property of the corporation; and a deed or will that declares the trust only, does what the law does with corporations without the declaration. It is obvious to all minds, that if an individual were to convey land to a corporation, to hold for the use of the shareholders of the body, he would thereby do no more than if he conveyed it without declaring any trust, unless, in the former case, the company would be powerless to sell and be compelled to hold in perpetuity, even beyond the power of the law to break in on the trust and to divest the title, whilst in the latter case the corporation would have power to sell.

If such trusts were allowed to be created, then perpetuities would be established beyond all control. If permitted, a person desiring to create a perpetuity in favor of his posterity, would only have to convey land to a corporation having a perpetual charter, declare the trusts, and induce the corporate body to accept the trust. The body would then be under the control of equity, which would require the trust to be executed and the profits of the estate applied according to the terms of the deed. And if the General Assembly were to require the sale of the property thus vested, the court would be met with the objection that the General Assembly is powerless to affect vested rights. Nor is it any answer to say that our statutes require real estate, beyond such as is necessary for the transaction of their business, to be sold at stated periods, as the General Assembly could not have contemplated such bodies would hold property in trust for individuals, and a case like the present was not intended to be embraced in its provisions. But if it should be conceded that, if this corporation should be

10—73D ILL.

appointed a trustee, as desired, and that it would be compelled to sell the property, as required by our statute, the will of the testator might, for aught we know, be entirely frustrated, the trust defeated, and the fund perverted.

Again, our statute has not authorized such bodies to exercise and perform such trusts, and the fact that it is expressly authorized by the New York statute is a strong implication that it was there considered that there was no such common law right, and that to be exercised it must be conferred by statutory enactment. It is said by Angell, in his work on Corporations, p. 100, that it is laid down by eminent writers that a corporation can not be seized of lands to the use of another, and that it is incapable of any use or trust. To sustain this position, he refers to Bacon on Uses, 57; Gilbert on Uses, by Sugden, 7 a; Kyd on Corporations, 72; Plowd. 102; 1 Cruise's Dig. tit. 11, Uses, chap. 2, sec. 15.

Hill, in his work on Trusts, 48, says: "In consequence of the statutes of mortmain, unless a corporate body possess a license from the crown, it can not now acquire or hold fresh real estate, either beneficially or as a trustee for the benefit of others. Thus, in a devise of lands to a body corporate, the trust is void at law, and the legal estate descends to the heir at law; but the trust, if sufficiently created, will, in such a case, fasten itself upon the estate, and the heir will be decreed to be a trustee to the use of the will." And he refers to *Powley* v. *Clockmakers' Com.* 1 Bro. C. C. 81, in support of the proposition.

There are, however, authorities which hold that a corporate body may hold lands in trust for other persons, and for purposes unconnected with the business or affairs of the company. But these authorities are not agreed as to the manner in which the property is held, some holding that the title vests in the individual members of the corporation, to be held for the purposes of the trust, whilst others hold the title vests in the body and not the individuals; but, whether such bodies may so act independent of power conferred upon them for the purpose, may be in doubt, but we incline to the belief that sound public policy should withhold the power. There is no inconvenience

in requiring such trust and confidence to be limited to natural persons, who are not only controlled by an enlightened conscience, but are amenable to the law to a greater extent than are such bodies. The natural person may be attached for a contempt in refusing, under a decree of court, to execute the trust, whilst the corporate entity could not be thus coerced to execute the decree, but those exercising the franchises might be, if within the jurisdiction of the court; but when the corporation is not within our State, a court of equity can not even exercise that control over it or its directors.

But, whatever may have been the common law as to domestic corporations, we should regard a foreign corporation as liable to be placed in the position of an alien. All the authorities agree that an alien can not be a trustee, and the reported cases agree that a State may, at pleasure, prohibit foreign corporations from transacting business within its limits—that it is only by permission, express or implied, that such bodies or their acts in the State are recognized as legal or valid. Then, even if there was legal power to appoint such a body to such a position, why make the appointment, when the General Assembly may, at any time, legally prohibit appellant from transacting any business in the State? There is no statute requiring the courts to make such an appointment. This would, of itself, be sufficient ground to warrant the chancellor in refusing to make the appointment, even if not restrained by the law.

We are unable, after a careful consideration of all the questions presented by this record, on *principle*, to distinguish it from the former decisions of this court. It is apparent that to permit such bodies to hold lands in unlimited amounts, and for indefinite periods of time, would be attended with all the inconveniences, if not greater, than to permit them to hold in their own right, and it would, we think, operate as a violation of our statute, which has limited the amount and time such bodies may hold lands, as well as the purposes for which it may be acquired. It is true, in this case it would not create a perpetuity, but we are at a loss to see that we could, on

principle, distinguish it from a lease for a thousand years or other long time, practically amounting to a perpetuity. The only difference seems to be the duration of the estate, both, practically, withdrawing such property from general use and power to alienate it.

The fifth section of the general incorporation act, laws 1871–2, p. 298, authorizes corporations in this State to own, possess and enjoy so much real and personal estate as shall be necessary for the transaction of their business, and may sell and dispose of the same when not required for the use of the corporation. That section further provides, that all real estate acquired in satisfaction of any liability or indebtedness, unless it may be necessary and suitable for the business of such corporation, shall be offered at public auction, at least once every year, at the door of the court house of the county wherein the same may be situated, or on the premises so to be sold, after giving notice, etc., and the sale shall be made whenever the price offered shall be not less than the claim of such corporation, including interest, costs and other expenses. And the section contains a proviso, that in case the corporation shall not sell the lands within five years at public or private sale, it shall be the duty of the State's attorney to proceed, by information in the circuit court, against the corporation, and the court is given jurisdiction to order the sale of such lands, and when thus sold the proceeds, after deducting the costs, etc., are required to be paid to the corporation.

The twenty-sixth section of the same act provides: "And no foreign or domestic corporation, established or maintained in any way for the pecuniary profit of its stockholders or members, shall purchase or hold real estate in this State, except as provided for in this act."

From these provisions it is manifest that the legislature intended to absolutely prohibit such bodies from acquiring or holding real estate, except so far as might be necessary for the transaction of their business, or such as might be purchased in satisfaction of claims and indebtedness in favor of the corporation. The enactment operates as a prohibition, and applies

as well to domestic as to foreign corporations. It can not be pretended that this real estate is necessary for the business of the company, or that it is being acquired in satisfaction of any indebtedness or other claim due the corporation, and the prohibition of the statute is against holding as well as purchasing otherwise than as authorized by that act.

Now, this is a foreign corporation, proposing to transact business in this State, and asks the court to invest it with title to a large quantity of real estate, not that it may hold the same for any of the purposes named in the fifth section of the act, but for another and different purpose, and one that is prohibited by the twenty-sixth section.

To grant the prayer of the bill, we think, would be in direct conflict with the statute, and being so, the court below did right in dismissing the bill, and the decree must be affirmed.

*Decree affirmed.*

Mr. Justice McAllister and Mr. Justice Sheldon dissenting, on the ground that the principles of the former decisions of this court, referred to in the opinion of the majority of the court, do not apply to the circumstances of this case, and the statute of 1871–2 can have no operative effect, this case falling within none of its provisions.