THE PEOPLE *ex rel.* John J. Healy, Appellee, *vs.* EDWARD A. SHEDD *et al.* Appellants.

*Opinion filed June 16, 1909—Rehearing denied October 14, 1909.*

1. PUBLIC POLICY—*courts cannot change the public policy of the State.* The public policy of a State is to be determined, in large measure, from its constitution and legislation, judicial decisions and the practice of the executive department, but when the legislature has acted upon a subject upon which it has power to legislate, public policy is what the statute passed by it indicates, and any change in such policy is for the legislature and not the courts.

2. CORPORATIONS—*limits of power of a corporation to hold real estate.* It is against the public policy of the State of Illinois, as evidenced by its statutes, judicially construed, for a corporation, either domestic or foreign, to hold real estate beyond what is necessary for the business or specific purposes of the corporation.

3. SAME—*corporation cannot be organized to acquire and hold real estate.* A corporation cannot be organized in Illinois for the purpose of acquiring and holding real estate, whether it is to be acquired by a deed or by the purchase of a leasehold estate for a term of years. (*Imperial Building Co.* v. *Chicago Open Board of Trade,* 238 Ill. 100, adhered to.)

4. SAME—*a corporation cannot be organized to lease land and construct office building.* A corporation cannot lawfully be organized in Illinois to buy or lease land for the purpose of erecting an office building to rent to its tenants, even though the furnishing of

power, heat, light and water to its tenants is included among the designated purposes of its organization. (*Rector* v. *Hartford Deposit Co.* 190 Ill. 380, distinguished.)

5. SAME—*a corporation may organize for lawful purpose and hold necessary real estate.* A corporation may be organized in Illinois for any purpose allowed by law and may own the necessary real estate for its business, but it cannot be organized for the purpose of owning real estate and do the necessary business incidental to such ownership.

6. SAME—*prosecution for ouster cannot be barred if there is no law for the organization of a corporation.* Where there is no law authorizing the organization of a corporation for the purposes claimed, no lapse of time and no acquiescence or waiver can bar a prosecution by the public for the ouster of the persons claiming to exercise the franchise.

7. STATUTES—*when principle of contemporaneous construction does not apply.* The principle that in interpreting a statute great regard should be paid to a practical and contemporaneous construction put upon it by public officers charged with its execution is useful in cases of doubtful meaning but it has no application where there is no ambiguity, nor can it be invoked to relieve one from the consequence of following such a construction against a contrary judicial construction by the Supreme Court.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

HARRY S. MECARTNEY, for appellants:

The mortmain policy is a mere statutory policy. It is no part of the common law of the various States. 7 Am. & Eng. Ency. of Law, (2d ed.) 722.

That policy was founded upon the dread of a withdrawal of real estate from trade uses and its being thus controlled by perpetual corporations, which, in turn, were controlled by few persons. 7 Am. & Eng. Ency. of Law, (2d ed.) 1075.

The whole subject is one of statutory control. As the right to hold some real estate or leasehold interest therein is inherent in or resultant from incorporation itself, it is necessary that limitation as to real estate holdings should be express or specific. *Lathrop* v. *Bank,* 8 Dana, 114.

The true construction of the act of 1872 (treating section 1 as if a comma were inserted between the words "real estate" and "brokerage," which ought not in reality to be done,) is this: That the "purposes" for which corporations are there allowed are business purposes,—business activities; that the exception of the "purpose" of real estate means the business of real estate; that such a business is evidenced by the general purchase and sale of real estate or the unlimited privilege of acquisition of real estate, or of repeated investments in real estate unconnected with other acts in themselves not necessarily involved in such business. The proviso in the exception which allows the "purchase and sale of real estate for burial purposes only," confirms this view, as it is assumed that the general "purchase and sale" of real estate has been excepted. *Hough* v. *Land Co.* 73 Ill. 23; *Rector* v. *Deposit Co.* 190 id. 380; *Improvement Co.* v. *Exchange Co.* 210 id. 26.

The act of purchasing one lot or tract of land is not, when done by an individual, carrying on the "business of real estate," any more than does the negotiating of one sale make one a real estate broker. *O'Neill* v. *Sinclair,* 153 Ill. 525.

For some of the purposes the charter is legal, and hence it will stand. *Cowell* v. *Springs Co.* 100 U. S. 55.

A leasehold is personal property. (*Thornton* v. *Mehring,* 117 Ill. 55; *Railway Co.* v. *People,* 153 id. 409; 5 Am. & Eng. Ency. of Law, 1025.) And while it may be included in the term "real estate," used in a very general sense, the fact that it is personal property further confirms the view that limited or specific or qualified holdings were not aimed at by the Incorporation act of 1872.

The charter in question here is a contract between the incorporators and stockholders and the State. *Dartmouth College case,* 4 Wheat. 518.

Where moneys have been invested under legal contracts, and especially where there has been a construction of the

courts supporting such contracts or investments, the State has no right, either through the legislature or the judiciary, to annul such contracts. *Harmon* v. *Auditor,* 123 Ill. 122; *Muhlker* v. *Railroad Co.* 197 U. S. 546.

F. A. BINGHAM, for appellee:

The rule of contemporaneous construction does not apply where the statute is unambiguous, and where the language of the statute is clear and free from doubt a contrary administrative construction will have no weight. *Whittemore* v. *People,* 227 Ill. 453.

The general Incorporation act does not authorize the organization of a corporation for the purpose of acquiring real estate and erecting a building thereon to rent to tenants or for the primary purpose of holding real estate for investment. *Building Co.* v. *Board of Trade,* 238 Ill. 100.

Acquiring a lease for ninety-nine years is acquiring real estate. A corporation organized for the purpose of acquiring a ninety-nine year lease of real estate for the erection of a building to be rented to tenants of the corporation must be regarded as organized for the purpose of acquiring real estate. *Building Co.* v. *Board of Trade,* 238 Ill. 100.

Mr. JUSTICE DUNN delivered the opinion of the court:

An information was filed in the circuit court of Cook county against appellants charging them with acting as a corporation, under the name of "The Merrimac Building Company," without being legally incorporated. Appellants filed five pleas, to which demurrers were sustained, and appellants electing to stand by their pleas, judgment of ouster was rendered, and this appeal was taken.

The first plea justified under the articles of incorporation of the Merrimac Building Company, which were formally regular, the final certificate bearing the date of April 20, 1896. The duration of the corporation was to be

ninety-nine years, and its objects were stated as follows: "The object for which it is formed is to purchase a leasehold estate in the premises situate in Chicago, Cook county, Illinois, known as sub-lots thirteen (13) and fourteen (14) of lots one (1), two (2), seven (7) and eight (8) of block thirty-seven (37), in the original town of Chicago, to construct, operate and maintain a building thereon, to lease space therein, and to supply the tenants thereof with power, light, water, heat and other service in connection therewith."

The second plea sets out that the Merrimac Building Company, immediately after its incorporation, as mentioned in the first plea, acquired the leasehold of the two sub-lots described in its charter on April 30, 1896; constructed the building in that year; has been in possession of the building and leasehold ever since; has put into the same over $600,000; has constantly used such franchises and privileges ever since, and claims waiver and acquiescence on the part of the State. It avers that said company constructed and has always operated in said building an elevator plant and a heating plant for the use of all the tenants therein, has always furnished water and other conveniences to them, and has operated said building as a business, furnishing engineers, janitors, firemen, carpenters, repair men and agents therefor at its own expense, and has itself maintained an office in said building for such management and operation.

The third plea avers that there is no public interest to be subserved by the proceeding; that it is being prosecuted solely at the instance of Patterson, who has merely a life estate in one-twelfth of the fee of the two lots described in the charter; that he is estopped to question the franchise, and has been expressly adjudicated to be so estopped in a proceeding heretofore pending between him and the company.

The fourth plea avers the due incorporation of the Merrimac Building Company, referring to the first plea and

making the allegations of the second and third pleas a part of the fourth. It alleges that ever since the passage of the act of the General Assembly of April 18, 1872, under which the said company was chartered, the various Secretaries of State and Attorneys General, and all the public officials having to do with the chartering of corporations or with their supervision or control, have consistently and uniformly treated the said act as authorizing the formation of corporations for building purposes and for the construction and operation of buildings upon real estate, in some instances the charters being limited to specific real estate described therein and in many instances the said charters not being so limited; that immediately or shortly after said act was passed some such charters were issued, under which buildings were constructed which have been operated by such corporations ever since; that from time to time the Secretary of State has issued such charters upon application therefor; that various buildings have been constructed under such charters and operated by such corporations, and many thousands of dollars of taxes have been paid by such companies regularly from year to year; that prior to the present year (1908) none of the officials of the State having to do with the chartering, supervision or control of corporations have ever officially questioned, in any manner, the right of such corporations to exercise their said franchise or privileges; that many of such corporations have been chartered for large sums of money, and that during the last thirty-five years or more, in the city of Chicago alone, upwards of $100,000,000 have been invested in the stock of such building companies and upwards of $50,000,000 have been invested in the bonds of such companies, and all upon the faith of the validity and legality of such charters, a list of some of such corporations being attached to the plea.

The fifth plea expressly adopts all of the averments of fact in the prior pleas, and alleges that the defendants are stockholders in said company, and that two of them are

holders of the bonds of said company issued July 1, 1896, to the amount of $250,000, which were purchased in February, 1905, on the faith that the charter of said company was good and valid, and that any judgment of ouster entered upon the information will impair the obligation of the contracts existing between the said company and its stockholders, bondholders and tenants, and will deprive them of their property without due process of law.

All the reasons urged by the appellants for a reversal of the judgment have been substantially determined adversely to their position in the recent case of *Imperial Building Co.* v. *Chicago Open Board of Trade,* 238 Ill. 100. They insist, however, that that case was wrongly decided and should be overruled, and that in some features this case may be distinguished from it. We have therefore re-examined the question in the light of the arguments with which we have been favored in this case.

The basis for the attack upon the incorporation of the Merrimac Building Company is, that the object of the incorporation is the acquisition and holding of real estate, and that the statute does not authorize incorporation for such purpose. In *Carroll* v. *City of East St. Louis,* 67 Ill. 568, the question arose whether a corporation created in the State of Connecticut, with power to receive, grant, convey, dispose of and transfer real estate, to take the management and charge thereof and sell and exchange the same for other property, could take and convey the title to real estate in this State. The question was thoroughly examined, the prior legislation of the State was considered in detail, and the conclusion reached that the General Assembly has from the very organization of the government manifested a clear and decided opposition to permitting corporate bodies to hold lands to any great extent in perpetuity, but has limited them to only enough real estate to enable them to carry out and accomplish the purpose of their organization, other than buying and selling real estate. The

present general Incorporation law, then recently passed, was also reviewed, and considered to adhere strictly to the policy manifested by previous legislation. The court held that the same limitation which existed against domestic corporations extended to foreign corporations, and that the latter for that reason could not take and convey title to real estate in this State though having competent authority in the States of their creation. The exercise of their powers in this State was permitted to the extent, and only to the same extent, that similar bodies of our own were allowed under our general laws.

In the case of *United States Trust Co.* v. *Lee,* 73 Ill. 142, it was again held that the legislature manifestly intended to absolutely prohibit corporations from acquiring or holding real estate, except so far as necessary for the transaction of their business and except such as might be acquired in the collection of their debts. The *Carroll case* was cited, and the court followed the rule there announced, saying: "We * * * must regard the rule as settled in this court and must leave it to the General Assembly to make any change they may deem for the best interest of our community, when it shall be demanded." Up to this time, however, the legislature has not made any change in the doctrine announced in those decisions. The *Carroll case* arose before the passage of the general Incorporation law of 1872, but since its decision, in 1873, it, as well as the *Lee case,* has been frequently cited and approved, and in various cases under the general Incorporation law this court has decided that the General Assembly has declared by its legislation that the public policy of the State will not allow corporations to hold real estate beyond what is necessary for the business or specific corporate purposes of such corporation. (*People* v. *Pullman's Palace Car Co.* 175 Ill. 125; *First Methodist Church* v. *Dixon,* 178 id. 260; *National Home Building Ass.* v. *Home Savings Bank,* 181 id. 35; *Bixler* v. *Summerfield,* 195 id. 147.) Irrespective of statutory re-

strictions, the doctrine is regarded as a settled principle of American jurisprudence.    5 Thompson on Law of Corporations, sec. 5772.

The public policy of the State is to be determined, in large measure, from its constitution and legislation, judicial decisions and the practice of the executive department. When the legislature has acted upon a subject upon which it has power to legislate, public policy is what the statute, passed by it, indicates. (*Harding* v. *American Glucose Co.* 182 Ill. 551.)    From the time of the enactment of our general Incorporation law it has been uniformly held that the acquiring and holding of real estate are not purposes for which a corporation may be organized.    If this holding had been contrary to the legislative intention the legislature might have been expected by some enactment so to declare. It has not done so.    The question, after repeated examination, has become well settled, and no reason appears why the rule heretofore announced by the court should be departed from.    If any change is demanded by the public interest it must be left to the legislature to make it.

We are referred to three cases which are said to be in conflict with the above conclusions.    In *Hough* v. *Cook County Land Co.* 73 Ill. 23, the corporation was organized under a private act of 1867, and its objects were stated to be, "to examine, survey and purchase lands or interest in lands, water-courses or interests therein, which are, as near as may be, adapted by nature to the use of water to irrigate the same, to facilitate the growth of crops in dry seasons, and to improve and cultivate the same for such crops, chiefly, as require irrigation to produce the largest returns." It changed its name and increased its capital stock under the law of 1872, and thereby became subject to the general law as if incorporated under it.    The court in that case was not called upon to decide, and did not decide, upon the power of the corporation to acquire real estate.    The bill alleged, and the court assumed but did not decide, that the

corporation had that power to the extent that it was granted by the special charter. The cause was heard on demurrer to the bill, which alleged that the change of name and increase of capital stock were void, and that all the authority appellee had by its charter was to purchase lands for the purpose of irrigation and improvement, for the raising of crops thereon, and the sale and disposal thereof when so improved. The bill was filed to set aside a conveyance of land which the complainant had made to the corporation, on the ground that the corporation was acting in violation of its corporate powers. The court assumed complainant's construction of the statutes to be correct, though it expressly stated that it expressed no opinion thereon, and, so assuming, it held that the corporation being authorized to purchase and hold lands and the complainant having sufficient capacity to convey, the title obviously vested by the delivery of the deed, and the question whether the corporation, by its purchase and use of the lands, had exceeded its powers was one between the State and the corporation, with which the complainant, as a grantor, simply, had no concern.

In *Rector* v. *Hartford Deposit Co.* 190 Ill. 380, the object of the corporation was "to erect and operate safety deposit vaults." This is a business distinct from the ownership, management and control of real estate. It is necessary to have a location for the business of receiving and storing valuable packages and providing vaults for that purpose, just as it is necessary to have a place for operating a machine shop, a mill, a hotel or a warehouse, all of which are purposes for which a corporation may be organized. The corporation built a fourteen-story building, 150 feet high and 91 feet by 50 feet, on the ground, having a basement, eight stores and over one hundred suites of offices. Its only safety deposit vault was in one end of an office on the fourth floor, and its inside dimensions were 5x6x8 feet. The vault and its earnings were, of course, of no consideration in the business actually transacted by the corporation,

and it was contended that the erection of such a building was a gross abuse of its corporate powers and that the corporation could not recover rent upon a lease of one of the rooms of the building, since the ownership of the building was beyond its corporate powers.  But the court held that since the corporation had power to own a building necessary for its corporate purposes, it could be required to answer to the State, alone, for an abuse of such power, and that that question could not be availed of as a defense to a suit for rent.  The court, however, did not hold that a corporation organized for the lawful purpose of erecting and operating safety deposit vaults could, under the pretense of erecting a building for corporate purposes, construct a building much larger than required for its legitimate business, containing offices intended to be rented for business purposes and engage in the business of renting such offices.

The point decided in the case of *Merchants' Improvement Co.* v. *Exchange Building Co.* 210 Ill. 26, on the question of *ultra vires,* was, that since the securing of the Chicago Stock Exchange, including six hundred persons in its organization, as a tenant of the new building proposed to be erected, would, through the business of the stock exchange, probably attract renters not only to the new building but to other buildings in the vicinity, the giving of a lease to the exchange at a nominal rent by the one corporation and the donation of an annual sum to it by the other, for the purpose of securing its occupancy of the building, were not so foreign to their respective corporate purposes as to be *ultra vires.*  The case did not consider the question here raised and has no application to this case.

It is insisted that the purchase of a leasehold estate is not the acquisition of real estate.  A lease for a term of years is a chattel real.  It conveys an interest in the land.  While it has some of the attributes of personalty it is treated in many respects as real estate.  (*First Nat. Bank of Joliet*

v. *Adam,* 138 Ill. 483; *Knapp* v. *Jones,* 143 id. 375; Hurd's Stat. chap. 30, sec. 38; chap. 77, sec. 3.) The exception of real estate from the purposes for which corporations may be organized embraces all interests in real estate, including leaseholds.

Included in the object for which the corporation purports to be organized it is proposed to construct, operate and maintain a building on the premises proposed to be leased, to lease space therein, and to supply the tenants thereof with power, light, water, heat and other service in connection therewith. It is urged that there is no substantial difference between an office building and a safety deposit building, and that the furnishing of power, water, light and heat is clearly a valid corporate purpose. The business of erecting and operating safety deposit vaults does not differ in kind from that of a warehouseman. The business transacted is the receipt and storage of goods. It involves no real estate transaction whatever. The depositary must have a place for keeping the deposits, and that involves the acquisition of some interest in real estate necessary to carry on the business. But the business involves no real estate, except incidentally. The contracts of the depositary with its customers for safe keeping are in no sense transactions in connection with real estate. The difference in the operation and management of an office building seems obvious. The business conducted deals entirely with real estate, or is incidental to the care of the property or the performance of the landlord's obligation to the tenants. The furnishing of power, light, water and heat in general is a valid corporate purpose, but it is obviously not valid here. The object is not to furnish power, light, water and heat without restriction. It is to furnish these things to the tenants of a building of the corporation which the corporation has no authority to build, on a lot it has no right to own. All the objects of the corporation's existence rest upon its acquisition of the leasehold of the particular tract.

Without that it cannot build any building, lease any space
or furnish any power, light, water or heat.  The sole ob-
ject of its organization is to acquire and hold real estate
and nothing else, exercising over it the incidental authority
of individual owners to build, improve, lease, and assume
and perform the ordinary obligations of owners of real es-
tate and landlords.  This it cannot do under the statute.  It
may organize for any purpose allowed by law and own the
necessary real estate for its business, but it may not organ-
ize for the owning of real estate and do the necessary busi-
ness incidental to its ownership.

By their fourth plea the appellants allege that ever since
the passage of the act of April 18, 1872, the Secretary of
State and Attorney General have treated such act as author-
izing the formation of corporations for building purposes
and for the construction and operation of buildings upon
real estate; that the Secretary of State has issued charters
therefor and various buildings have been constructed and
operated under such charters; that no State official has
ever questioned the right of said corporations to exercise
their franchises, and that more than $150,000,000 has been
invested in the stock and bonds of such corporations on the
faith of the validity of such charters.  It is contended that
there is no room for doubt that this is the true construction
of the statute, but that if there were such doubt the facts
alleged in the plea show a contemporaneous construction
of the law by public officers charged with its enforcement
which this court should follow.  It may be doubted whether
such a plea tenders any issue of fact.  We express no opin-
ion on that question.  The principle sought to be availed of
is, that in interpreting a statute great regard should be paid
to a practical and contemporaneous construction put upon
it by public officers charged with its execution.  The doc-
trine is useful in cases of doubtful construction but it has
no application where there is no ambiguity of meaning.
(*Whittemore* v. *People,* 227 Ill. 453.)  In such case the

law may be violated but not construed. In Cooley on Constitutional Limitations (5th ed. p. 60,) the rule is thus stated: "If the question involved is really one of doubt, the force of their (officers') judgment, especially in view of the injurious consequences that may result from disregarding it, is fairly entitled to turn the scale in the judicial mind. Where, however, no ambiguity or doubt appears in the law, we think the same rule obtains here as in other cases,—that the court should confine its attention to the law, and not allow intrinsic circumstances to introduce a difficulty where the language is plain. To allow force to a practical construction in such a case would be to suffer manifest perversions to defeat the evident purpose of the law-makers."

The decisions cited show that the language of the statute is plain and free from doubt. In 1873,—the year in which the earliest of the charters mentioned in the list attached to the plea was granted,—this court decided that under the statute a corporation could not take and hold real estate more than enough to enable it to carry out the purposes of its organization, other than buying and selling real estate. In the same year, according to the plea, a charter was issued to a corporation "to buy, own, hold in trust, possess, improve, lease, sell and convey real estate." When the decision in *Carroll* v. *City of East St. Louis, supra,* was rendered, what doubt remained about the question of the power of a corporation to own real estate? Which construction should investors have followed,—that of the Secretary of State or of this court? If they thought the court was wrong or its statements *obiter dicta* they followed the other view at their peril. The *Carroll case* was followed by the *Lee case* the next year, and the court has consistently announced the same doctrine since. In the face of this judicial construction there is no place for the doctrine of contemporaneous construction.

There can be no question of *laches,* acquiescence or waiver on the part of the public. Where there is no law for the formation of a corporation for the purposes claimed, no lapse of time and no acquiescence or waiver can bar a prosecution for the ouster of those claiming to exercise the franchise.

The judgment is affirmed.           *Judgment affirmed.*