## In re Estate of Josephine King, deceased.

## On Appeal of Jessie Melick, Administratrix, Appellant, v. Central Investment Company, Appellee.

### Gen. No. 19,300.

1. CORPORATIONS, § 683*—*necessity of foreign corporations requalifying under the Act of 1905.* A foreign corporation having qualified in 1897 to do business in this State, *held* not required to requalify under the Act of 1905, J. & A. ¶ 2525.

2. CORPORATIONS, § 661*—*when defenses of want of corporate existence or abuse of powers of foreign corporation not available.* Where a foreign corporation organized to construct buildings, to do general contracting and building business, and to do a general collection business and authorized to do business in this State, sues a tenant for rent, the action cannot be defeated by a defense of the tenant that the corporation has no corporate existence or that it has abused its rights by acquiring more real estate than it actually needs to carry on its business, since such questions can only be raised by the State in a direct proceeding by quo warranto.

3. JUDGMENT, § 519*—*matters of which a judgment in forcible entry is res adjudicata.* A judgment in favor of a foreign corporation in a suit by it in forcible detainer is *res adjudicata* on all defenses which could have been made in the case, including the questions of the validity of the lease, the right of the corporation to make the lease and the right of the corporation to sue for possession and recover thereunder.

4. LANDLORD AND TENANT, § 504*—*liability of tenant on covenants in lease after recovery in forcible detainer.* Under a provision in a lease that the lessor in default of payment of the rent may take possession either by forcible detainer or otherwise, without the same working a forfeiture of the rents to be paid and the covenants to be performed during the full term of the lease, *held* that the lessor recovering a judgment in forcible detainer could thereafter sue and recover under various covenants in the lease.

BARNES, J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. H. STERLING POMEROY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed April 21, 1914.

* See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

**Statement by the Court.** On October 14, 1907, the claimant, the Central Investment Company, a New Jersey corporation, entered into a lease with deceased, Josephine King, whereby said Central Investment Company demised to said deceased the double store of the premises known as Nos. 199 and 201 East 55th street in the city of Chicago, for a term commencing November 1, 1907, and ending October 31, 1910, at a monthly rental of $75 from November 1, 1907 to April 30, 1909, and at a monthly rental of $80 from May 1, 1909 to October 31, 1910, the rent being payable in advance on the first day of each month.

The lease was in the usual form and contains the usual provisions of leases used in Chicago. The provisions of the lease, material for the consideration of the issues presented in this case, are as follows:

Clause 2 of the lease provides:

"That said leased premises are entered upon in good repair; that the party of the second part will keep said premises in good repair and will keep said premises and appurtenances, including catch-basins, vaults and adjoining alleys, in a clean and healthy condition, according to the city ordinances and direction of the proper public officer, during said term and 'upon the termination of this lease, in any way, will yield up said premises to party of the first part in good condition, loss by fire and ordinary wear excepted, and deliver the keys at the office of W. K. Young & Bro., Chicago, Ill.' "

Clause 5 of the lease provides:

"Said party of the second part will pay (in addition to the rent above specified) all water rents taxed, levied or charged on said demised premises for and during the term for which this lease is granted."

Clause 7 provides:

"If said party of the second part shall abandon or vacate said premises, the same may be re-let by party of the first part for such rent and upon such terms as said first party may see fit; and if a sufficient sum shall not thus be realized, after paying the expense of such re-letting and collecting, to satisfy the rent

hereby reserved, the party of the second part agrees to satisfy and pay all deficiency.''

The last paragraph of clause 9 provides:

''The party of the second part further covenants and agrees to pay and discharge all reasonable costs, attorney's fees and expenses that shall be made and incurred by the party of the first part in enforcing the covenants and agreements of this lease; and such costs, fees and expenses may be taxed as costs in any suit or proceeding that may be brought to enforce any of such covenants or agreements; and all the parties to this lease agree that the covenants and agreements herein contained shall be binding upon, apply and inure to their respective heirs, executors, administrators and assigns.''

The last paragraph in the lease provides that if default be made in the payment of rent, or any instalments thereof, that the lessor may confess judgment for the amount due with lawful interest thereon, together with the costs and five per cent. of the amount of rent due for attorney's fees.

The lease contains three special typewritten clauses pasted on the original lease. The third of said special clauses is as follows:

''It is further covenanted and agreed that in case of any default by the lessee in the payment of rent or otherwise, the lessor, or his agents, shall have the right to re-enter and take full and absolute possession of the above premises, either by forcible entry, detainer proceedings, or otherwise, and hold and enjoy the same fully and absolutely, without such re-entry working a forfeiture of the rents to be paid and the covenants to be performed by said lessees during full term of this lease. The said lessee hereby waives his or her notice under any statute in the State of Illinois relating to forcible entry and detainer.''

Josephine King took possession of the premises described in the lease and remained in possession until her death, which occurred on October 25, 1908. She paid rent under said lease up to and until the time of her death; that is to say, until October 31, 1908.

After her death, the administratrix of her estate, Jessie Melick, continued in possession under the lease for about eight months, refusing, however, to pay rent. On January 28, 1909, the Central Investment Company caused the following notice to be served upon said administratrix:

"To Jessie Melick, personally and as administratrix of the estate of Josephine King, deceased:

You are hereby notified that immediate possession of the premises at numbers 199 and 201 East 55th street, in Chicago, Ill., is demanded of you by the Central Investment Company, the lessor of said premises, on account of your default in the covenants in the lease of said premises, made with Josephine King, the said deceased, as lessee. The landlord and lessor is hereby availing itself of the typewritten clause numbered 3 in said lease, providing for right of re-entry after lessee's default, without forfeiting the lease or the rights of the lessor thereunder. The default complained of is non-payment of rent according to the terms of the lease since November 1, 1908.

CENTRAL INVESTMENT COMPANY,
by Victor M. Harding, Attorney."

Jessie Melick, as administratrix, having failed either to pay rent or vacate, suit was commenced on February 2, 1909, in the Municipal Court of Chicago against her as such administratrix, in forcible detainer, and also under the statute to recover the rent then due, amounting to $300. On February 27, 1909, judgment was entered in the Municipal Court against said administratrix for possession of said premises and also for the rent of $300 then due. From this judgment the administratrix, Jessie Melick, prayed and perfected an appeal to this court, where, in consequence of said appeal, the Central Investment Company was required to follow such appeal, employ counsel, enter its appearance, prepare and file brief and additional abstract, etc. On June 16, 1911, the judgment of the Municipal Court was affirmed in this court. *Central Investment Co.* v. *Melick*, 162 Ill. App. 474.

After the administratrix vacated the premises, which she did about July 1, 1909, the Central Investment Company caused necessary repairs to be made so as to put the premises in condition to re-rent, and on December 29, 1909, through its agents, W. K. Young & Bro., rented the premises to J. D. O'Neill, for the term commencing January 1, 1910, and ending April 30, 1912, at a rental of $50 per month from January 1, 1910 to April 30, 1910, and at a rental of $70 per month from May 1, 1910 to April 30, 1912, which covered the unexpired term of the Josephine King lease. Under the O'Neill lease, the Central Investment Company was required to pay the water tax which the deceased had covenanted to pay under her lease. Under the O'Neill lease, the Central Investment Company collected $620 during the unexpired term of the Josephine King lease, and paid out for water tax during the unexpired term of the King lease the sum of $21.06. The Central Investment Company also paid to Barnard & Corrigan, for cleaning out sewer choked up with grease, $6; to Theodore Anderson, for repairs, etc., to put the premises in shape to re-rent, $20; to W. K. Young & Bro., commissions on re-renting the premises, $18.60; to J. J. Butler, plumber, for cleaning grease from sewer, $31.50, for connecting radiator, disconnected by deceased, $2.75, for putting in new connecting sewer made necessary by stoppage by grease, $100; to Victor M. Harding, attorney's fees in the Municipal Court in forcible detainer suit, including preparation of bill of exceptions, $150, and $5 which he paid for stenographer's fees; to the clerk of the Appellate Court, appearance fee on appeal in forcible detainer case, $5, and final costs in the Appellate Court upon getting a mandate, $9.25; to Barnard & Miller, for printing brief and additional abstract, $18.75. The Central Investment Company also incurred obligations for reasonable attorney's fees in the Appellate Court, $100, of which $75 was paid to one Charles E. Anthony, which did not include

services by him on the oral argument, etc. The Central Investment Company, claimant, was compelled to and did employ counsel, who prepared and filed the claim in question in the Probate Court within the year allowed by law, and who, after the expiration of the Josephine King lease, prepared and filed the amended claim, thereby giving proper credit for rent collected under the O'Neill lease, etc.; and the counsel who tried the case in the Probate Court and secured the allowance of such claim, and who, upon appeal to the Circuit Court, entered claimant's appearance and tried the case there and secured an allowance of such claim, for which services the testimony in the case shows that $250 would be a reasonable and customary charge.

The amended claim of the Central Investment Company was sworn to July 10, 1911, and filed in the Probate Court on July 11, 1911, after the expiration of the King lease and after the forcible detainer case had been affirmed in this court. The claim, as so amended, includes the above mentioned items paid out and expenses of the claimant, and also includes five other small items made by the claimant, which, however, were excluded and disallowed by the court and are not now involved; such amended claim also included claim for interest at the legal rate on said several instalments for rent, including said judgment of $300 entered in the Municipal Court, less a credit of the $620 rent collected under the O'Neill lease, together with legal interest thereon.

The amended claim of appellee was allowed in the Probate Court on January 27, 1912, for the sum of $1,826.26. The case was appealed by Jessie Melick, administratrix, to the Circuit Court, where the amended claim was, by leave of court, further amended as to the item of $100 therein charged as reasonable attorney's fees for collection of the rent.

On October 21, 1912, the case was heard in the court below without a jury, and, after hearing the evidence and arguments of counsel, the court found the issues

for the Central Investment Company on all items, except items of January 8, 1909, for $5 for attorney's fees, and March 24, 1909, $6 for costs paid; the item of July 29, 1909, $2 for reporting case; $10 fee to Victor Harding; the item of February 18, 1909, cash paid to James A. Rose, Secretary of State, $1.50; and the $100 paid J. J. Butler for new sewer connection. The court also refused to allow $200 for attorney's fees for collection of rent as asked in the amendment to the amended claim, but did allow $100 therefor. The court allowed interest on the $300 judgment in the Municipal Court, but refused to allow interest on the remainder of the several instalments of rent. The claim, as allowed by the court below, was for the sum of $1,814.80, for which judgment was entered to be paid in due course of administration. This appeal is from that judgment.

ROBERT D. MELICK, for appellant.

GAIL E. DEMING, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The administratrix resisted the claim in the court below on the following grounds and insists upon them here: (1) Appellee corporation was not authorized, on October 14, 1907, under the Act of 1905 (J. & A. ¶ 2525), as to foreign corporations, to do business and make leases on real property and the lease in question; (2) that real estate brokerage business of buying, selling, holding, reletting and subleasing cannot be carried on in Illinois by a foreign corporation; (3) that appellee had not procured the necessary certificate from the Secretary of State, pursuant to the Act of 1905, wherein the powers and objects were stated it may exercise herein not in conflict with the law or public policy of the State of Illinois; (4) that it could do no business for which a domestic corporation could

not be organized, and that the lease to Josephine King, deceased, was void; and, further (5) that by the forcible detainer proceedings in the Municipal Court, February 2, 1909, the lease was terminated and canceled and has ceased to exist; and that the several items of appellee's claim are not covered by or recoverable under the terms of the lease.

The charter of appellee was introduced in evidence and appears in the record. Under its charter the Central Investment Company was authorized, among other things, to do and carry on the following businesses, all of which could be legally carried on in the State of Illinois: First, the building of houses and other buildings, structures and improvements and other mechanical business; sixth, to do a general contracting and building business; seventh, to do a general collection business. The Central Investment Company appears to have filed its charter with the Secretary of State of Illinois on September 28, 1897, and on that date the Secretary of State issued its certificate, reciting, among other things:

"Whereas, Central Investment Company, incorporated under the laws of the State of New Jersey, has filed in the office of the Secretary of State duly authenticated evidence of its incorporation, as provided by law, and has, in all respects, complied with the requirements of law governing foreign corporations; * * * that said Central Investment Company is from the date hereof duly authorized to do business in the State of Illinois for a term of ninety-nine years, and is entitled to all the rights and privileges granted to foreign corporations under the laws of this State."

In *Central Investment Co. v. Melick,* 162 Ill. App. 474, *supra,* which was the appeal from the judgment of the Municipal Court in forcible detainer case, brought by the Central Investment Company against Jessie Melick, administratrix, under the lease in question in this case, it was held that the Central Investment Company had in all respects complied with the requirements of law governing foreign corporations,

and that this was all that was necessary for it to do in order to enable it to carry on the business in this State.

In *White Sewing Machine Co. v. Harris,* 252 Ill. 361, the Supreme Court held:

"In our judgment the legislature by the act of 1905 intended that it should be a mere continuance of the main features of the former act, with some modifications as to details, which would not require foreign corporations already doing business in the State to re-qualify or pay again the license fee already paid before they could do business in the State. Appellant, by its license issued under the act of 1897, was authorized to bring this suit."

We think it clear, therefore, that the Central Investment Company, having qualified on September 28, 1897, to do business in this State, was not required to re-qualify under the Act of 1905.

The Central Investment Company, as we have seen, was authorized by its charter to carry on various kinds of business authorized to be done in this State by corporations organized under the laws of this State. It was, under the license issued to it, authorized to do and carry on in this State any of the several objects for which it was organized, as stated in its charter, which could be lawfully carried on by a domestic corporation; in other words, it had the same power and authority to carry on the business for which it was organized in this State that a domestic corporation would have, no more nor less. It had the right to carry on in this State all businesses mentioned in the first, sixth and seventh objects mentioned in its charter. There was a law authorizing such corporation. It was a corporation *de jure* under the express provisions of the statutes of Illinois, and it was authorized to own and hold real estate sufficient for its needs. There being a law of Illinois authorizing the Central Investment Company to do business in this State, and being authorized to own and hold sufficient real estate for its needs, if it has abused such rights and acquired

more real estate than it actually needs to carry on its business, such right can only be questioned by the State in a direct proceeding by quo warranto. We think this doctrine is well settled in this State. In *Imperial Building Co. v. Chicago Open Board of Trade*, 238 Ill. 100, the main question was whether the Imperial Building Company was legally organized and whether the lessee could raise that question in an action for rent on the lease, and it was held that the tenant might raise the question when there was no law authorizing such a corporation. The Supreme Court, however, stated the doctrine applicable where there had been an attempt in good faith to organize under a law authorizing the incorporation and corporate functions were exercised by the corporation so organized, and held:

"The general rule is, that where there is an attempt in good faith to organize under a law authorizing the incorporation, and corporate functions are exercised, this makes the organization a corporation *de facto,* and its legality cannot be questioned collaterally or by one who deals with it as a corporation. In such cases the introduction in evidence of the charter and proof of user, and that the party seeking to deny the legality of the corporation dealt with it as a corporation, sufficiently proves it a corporation *de facto,* and whether there may have been some irregularities in perfecting the incorporation will not be inquired into. The legality of such incorporation can only be attacked by the State in direct proceeding."

In the *Imperial Building Co.* case, *supra,* and in the case of *People v. Shedd*, 241 Ill. 155, there was no legitimate business the corporations could do under their charters; and having been incorporated simply and solely to deal in a particular piece of real estate in each case, it necessarily followed from the statement of the corporation in each case that there was no law authorizing such corporation. In the *Shedd* case, *supra,* the Court said:

"In *Rector v. Hartford Deposit Co.*, 190 Ill. 380, the object of the corporation was 'to erect and operate safety deposit vaults.' This is a business distinct from the ownership, management and control of real estate. It is necessary to have a location for the business of receiving and storing valuable packages and providing vaults for that purpose, just as it is necessary to have a place for operating a machine shop, a mill, a hotel or a warehouse, all of which are purposes for which a corporation may be organized. The corporation built a fourteen-story building, 150 feet high and 91 feet by 50 feet on the ground, having a basement, eight stores and over one hundred suites of offices. Its only safety deposit vault was in one end of an office on the fourth floor, and its inside dimensions were 5x6x8 feet. The vault and its earnings were, of course, of no consideration in the business actually transacted by the corporation, and it was contended that the erection of such a building was a gross abuse of its corporate powers and that the corporation could not recover rent upon a lease of one of the rooms of the building, since the ownership of the building was beyond its corporate powers. But the court held that since the corporation had power to own a building necessary for its corporate purposes, it could be required to answer to the State, alone, for an abuse of such power, and that that question could not be availed of as a defense to a suit for rent."

So here, in this suit for rent by the Central Investment Company, duly authorized in New Jersey and in this State, to do business which required the owning of real estate for the purpose of conducting and carrying on its business, it cannot in this action for rent be defeated by a defense, at the instance of a tenant, that it has no corporate existence. It is required to answer to the State alone on that question. In the *Rector* case, *supra,* the Supreme Court further said at page 389 of the opinion:

"We think it has never been held in this State, or understood to be the law, that the question whether such power has been abused could be raised and availed of in defense in a proceeding wholly collateral to the

question of the right and power of the corporation in the premises. The earlier decisions of this court are to the effect that a corporation having general power to own real estate for corporate purposes and to acquire real estate in collecting debts due it, may be required to answer to the State, and to the State only, for an alleged usurpation of power in the respect of the ownership and enjoyment of landed property.''

To the same effect are *Springer v. Chicago Real Estate Loan & Trust Co.*, 202 Ill. 17, and *Hudson v. Green Hill Seminary Corporation*, 113 Ill. 618.

The Central Investment Company appears to have complied with the law of this State, and is entitled to do business in this State, and it also appears from the charter of the company offered in evidence by the attorney for appellant, that the company is authorized to lawfully carry on several of the objects for which a corporation may be formed in this State. Being so authorized, to do business in this State, the statute expressly gives it the power to hold real estate sufficient for its needs, and if it has abused such right, the State, and the State alone, can raise the question.

Furthermore, appellant is estopped from questioning the right of appellee to sue or recover under the lease in question. The suit brought by the Central Investment Company in the Municipal Court was an action under the statute for the possession of the premises unlawfully withheld, and for rent due up to the time of the commencement of the suit under the lease in question. It was between the same parties as in this case. It involved the question of the validity of the lease here in controversy, and the right and power of the Central Investment Company to make such a lease and to collect rent thereunder. It also involved the question which counsel seek to raise in this case, of the right under special clause 3, to bring suit in forcible detainer before the termination of the lease. Judgment was duly entered in the cause, not only for the possession but also for the several instalments of rent due. On appeal to this court the

judgment was affirmed. *Central Investment Co. v. Melick, supra.* Under the well established principle of law, it was the duty of appellant to present any and all defenses which she had to such action, including the right of the Central Investment Company to make the lease, its right to sue for possession and recover thereunder, and the liability of the appellant herein under the lease. All such questions here raised, which could have been raised and presented in that case, are settled and adjudicated. The only questions here raised and discussed by appellant, which were not settled in that case, is the effect of the proceedings in that case upon the lease itself as to its determination or cancellation, and the amount due, if any, at the commencement of this action.

As to the effect of the proceedings in the former case upon the lease itself, clause 3 of the lease, quoted in the statement preceding this opinion, provides that the lessor should have the right, in case of default by the lessee in the payment of rent, to re-enter and take full and absolute possession of the premises without such re-entry working a forfeiture of rents to be paid and the covenants to be performed by the lessee during the full term of the lease. Under this express provision of the lease, the Central Investment Company was authorized, in case of default, to re-enter and take possession of the premises, either by forcible detainer proceedings or otherwise, without the same working a forfeiture of the lease. *Grommes v. St. Paul Trust Co.,* 147 Ill. 634. The lease in the *Grommes* case contained a similar clause to the special clause in this lease. In that case default was made in the payment of rent and suit was commenced for possession of the premises. The Supreme Court, after reviewing cases bearing on the question quite fully, on page 643 of the opinion, says:

"There is nothing illegal or improper in an agreement, that the obligation of the tenant to pay all the rent to the end of the term shall remain notwithstand-

ing there has been a re-entry for default; and, if the parties choose to make such an agreement, we see no reason why it should not be held to be valid as against both the tenant and his sureties.''

See also the case of *Heims Brewing Co. v. Flannery*, 137 Ill. 309, where there was a covenant in the lease in controversy in that case, that the obligation on the part of the defendant to pay the stipulated consideration should not cease by reason of the surrender of the building. To the same effect is the case of *Springer v. Chicago Real Estate Loan & Trust Co., supra.*

Upon a review of the evidence, we think the amount of the judgment of the Circuit Court was fully justified thereby. There is no error in the record, and the judgment is affirmed.

*Affirmed.*

MR. JUSTICE BARNES dissenting: I think the recovery should be limited to what is due on the Municipal Court judgment of $300; that the proceeding in that court was not *res adjudicata* of the question here involved, the right to recover for what is against public policy of this State; and that direct proceedings by the State are not necessary to present such question.