DAVIS REGULATOR COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72667.   Promulgated August 6, 1937.

*George E. Frazer, Esq.,* and *Hubert Van Hook, Esq.,* for the petitioner.

*E. L. Corbin, Esq.,* for the respondent.

## OPINION.

MELLOTT: The petitioner contends that no part of the $82,574.55, expended by it in the acquisition of a new building for its manufacturing business out of the $95,000 received in connection with the sale or cancellation of its leasehold, represents recognizable gain to it because of the provisions of section 112 (f) of the Revenue Act of 1928. The section, in so far as pertinent here, is set out in the margin.[1]

The respondent contends that there was merely a sale or release by petitioner of a portion of its personal property and the subsequent purchase by it of real property; that "the conversion of money received for damages to business and vacation of leasehold property into real estate and buildings is not a conversion into property similar or related in service or use as contemplated by section 112 (f)", *supra;* and that it was not the intention of Congress, in the enactment of the section, to provide a method to enable taxpayers to escape the taxes on profits derived from the sale of a leasehold through the reinvestment of such profits in real property.

Section 112 (f), *supra,* and its prototype in other revenue acts, "was designed to prevent an inequitable incidence of taxation", *Washington Market Co.,* 25 B. T. A. 576, 584, and its provisions "are relief provisions by which a taxpayer may postpone the taxation of so much of the gain derived from an involuntary conversion as it uses in replacement." *International Boiler Works Co.,* 3 B. T. A. 283, 291. Being relief provisions, they are "to be liberally construed to effectuate their purposes"; *Paul Haberland,* 25 B. T. A. 1370, 1378; *August Buckhardt,* 32 B. T. A. 1272, 1277.

The section must be read and considered in its entirety; and, while it is true, as respondent points out upon brief, that a taxpayer seeking to avail itself of an exemption from tax must come clearly within the terms of the statute allowing the exemption, we are of the opinion that this petitioner has done so. It is sufficient answer to respondent's argument that there was merely a sale to point out that the section does not, by its terms, preclude a sale. On the contrary, it refers specifically to a conversion of property "into money"—the simplest form of a sale. Whether the leasehold which it gave up was, as contended by respondent, merely personal property or not, is probably unimportant, but it was a "chattel real", an interest in the land,

---

[1] SEC. 112. (f) *Involuntary conversions.*—If property (as a result of * * * an exercise of the power of * * * condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, * * * no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

and "it is treated (by the courts of Illinois) in many respects as real estate." *People* v. *Shedd*, 241 Ill. 155; 89 N. E. 332, 335. If the statute required that the money derived from the sale or conversion be invested in "similar" property and stopped there, there would be more substance to respondent's argument; but it goes further, and, as pointed out by this Board in *Paul Haberland, supra*, the word "similar" is "followed immediately by the phrase 'or related', which * * * considerably broadens the scope of the statute and gives the taxpayer more latitude in making an investment * * *." As we view the facts before us, the petitioner had an interest in real estate, capable of and being used by it in connection with its business. This interest was sold and the money received was invested by it in another interest in real estate "similar or related in service or use to the property so converted." That, we believe, is all that is required to entitle petitioner to the benefits of the section under consideration; and we do not agree with respondent's contention that the amount received from a sale of a leasehold must be reinvested in another leasehold. The test, as was stated in *Washington Market Co.*, *supra*, is "whether there is a replacement in the character of the service or use." Here there was such replacement. Petitioner used the new building for the identical purpose that the old one was used—carrying on its manufacturing business. Under the circumstances it must be held that it is entitled to the benefit of section 112 (f), though in passing it may be remarked that the "benefit" to petitioner may, in the long run be small; for the property which it acquired, has the same "basis", under section 113 (a) (10) of the Revenue Act of 1928 as the property converted.

But, says respondent, a possible threat of condemnation is not a threat and "the fact that the railroad company threatened to bring condemnation proceedings is not proof that it would have been successful." It is stipulated that the railway company "is a public utility corporation authorized by law to exercise the power of eminent domain in the State of Illinois." A cursory inspection of the statutes of the state bears out such conclusion. We must assume that the railway company would have been successful if it had instituted appropriate proceedings to condemn petitioner's property. But there need not be an actual condemnation. If the property were conveyed, as a result of "the threat or imminence" of condemnation the statute is satisfied. The letter from the agent of the railway company, set out in full above, if not sufficient to show that condemnation was imminent, does nevertheless contain a distinct threat that condemnation proceedings would be resorted to, if necessary. Under the circumstances we have no hesitancy in concluding that the sale was made because of "the threat or imminence" of condemnation. *Piedmont-Mt. Airy Guano Co.*, 8 B. T. A. 72, cited

by respondent is not in point, nor is the conclusion therein reached contrary to the views herein expressed. In that case a fertilizer company sold its property to a sugar company and invested the proceeds elsewhere. It was not contended that the sugar company had the power of eminent domain, nor was it shown that any official action had been taken or was seriously contemplated by the authorities to condemn the property. The Board merely held that the evidence was insufficient to warrant the conclusion that the petitioner sold its property because of the imminence of condemnation proceedings.

No evidence was presented by petitioner as to the cost (or other basis) of the leasehold to it. We must assume therefore that the entire $95,000 received from the railway company represented gain. We have found that it expended $82,574.55 of the amount received in the acquisition of other property similar or related in service or use to the leasehold formerly owned by it. Under the provisions of section 112 (f), *supra*, petitioner's gain is not to be recognized to the extent of this expenditure, but is to be recognized in an amount not in excess of the $12,425.45 which petitioner did not use in the acquisition of the new building. It follows that respondent erred in including the $82,574.55 in petitioner's income for the taxable year.

As to the negligence penalty, counsel for the respondent admitted at the hearing, and the exhibits show, that a disclosure of the receipt of the income involved was made by the petitioner in its income tax return for the taxable year. It has been held that where full disclosure is made and the taxpayer has "reasonable grounds to differ from the conclusion" of the Commissioner that a tax is due, the negligence penalty should not be imposed. *Herman Senner*, 22 B. T. A. 655, 658; *Frank T. Heffelfinger*, 32 B. T. A. 1232; affd., 87 Fed. (2d) 991. A similar holding is made here and no penalty will be imposed.

*Judgment will be entered under Rule 50.*