HELEN W. S. JOHNSON et al. Appellants, vs. THE NORTH-
ERN TRUST COMPANY et al. Appellees.

*Opinion filed October 16, 1914—Rehearing denied Dec. 3, 1914.*

1. APPEALS AND ERRORS—*when decree is final.* A decree which
disposes of all the substantial rights of the parties in the subject
matter of the litigation and adjudicates the title to the property
and the right to its possession, leaving nothing more to be done
than to take an account, is final and appealable.

2. LEASES—*effect where lessee assigns lease to supposed corpo-
ration having no authority to organize.* Where the lessee of real
estate assigns the lease to a supposed corporation the organization
of which is void for want of statutory authority to incorporate, the
assignment is void and the original lessee remains bound; but the
stockholders of the supposed corporation whose money was ex-
pended in the erection of a building on the land acquire an equi-
table interest in the property by virtue of the payment of the money
and the performance of the covenants which constituted the con-
sideration for the lease to the original lessee.

3. SAME—*association of individuals to purchase a leasehold es-
tate and erect building is not illegal.* An association of individuals
for the purpose of purchasing a leasehold estate and erecting a
building is not prohibited by law or contrary to public policy, and
the mere fact that the association is illegal because it took the
form of a corporation not authorized by law does not work a for-
feiture of the money invested in the enterprise when the organiza-
tion of the corporation is held void, but the property assembled by
such individuals in their associated capacity is still their property,
in the possession and use of which equity will protect them.

4. SAME—*what constitutes surrender of lease.* A surrender of
a lease is the yielding up of the estate to the landlord so that the
leasehold interest becomes extinct by mutual agreement between
the parties, and it may be in express words or by operation of law
without express surrender, when the parties do some act which im-
plies that both have agreed to consider the surrender as made.

5. SAME—*not every change of possession is a surrender.* A
surrender of a lease may take place by operation of law, but not
every change of possession, though actual and continued, amounts
to such surrender.

6. SAME—*what does not constitute a surrender.* The valid as-
signment of a lease by the lessee, consented to by the lessor, and
the acceptance of rent from the assignee, do not, of themselves,
constitute a surrender of the lease.

7. SAME—*when the right to object to assignment of a lease is waived.* Where an attempted assignment of a leasehold interest in trust property by the lessee is assented to by the lessor and the beneficiaries under the trust, the right to forfeit the lease or object to the assignment because it did not come within the provisions of the lease is waived.

APPEAL from the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding.

SCOTT, BANCROFT & STEPHENS, and STEWART JOHN-SON, (EDGAR A. BANCROFT, REDMOND D. STEPHENS, and LESTER L. FALK, of counsel,) for appellants.

HARRY S. MECARTNEY, for appellee Edward A. Shedd.

JAMES HAMILTON LEWIS, (JOHN C. PATTERSON, *pro se,*) for appellee John C. Patterson.

JUDAH, WILLARD, WOLF & REICHMANN, for the appellee the Northern Trust Company.

Mr. JUSTICE DUNN delivered the opinion of the court:

On July 29, 1910, Helen W. S. Johnson filed a bill in equity in the superior court of Cook county, which was afterward amended, Stewart Patterson joining as complainant in the amended bill, the prayer of which was for an accounting of the rents and profits of certain real estate situate at the north-west corner of State and Washington streets, in the city of Chicago, upon which is a twelve-story building known as the Stewart building, the appointment of a receiver of the rents and profits of such building, the delivery of the possession and control thereof to the Northern Trust Company, the cancellation of a certain lease of the premises, and a decree that the title thereto and the sole right of possession and control are in the Northern

Trust Company, as trustee, for the benefit of the complainants and the other beneficiaries named in a certain deed of trust of said premises to that company. On the day of the filing of the original bill the Northern Trust Company filed its bill, also in the same court, praying for the instruction of the court as to its rights and duties as trustee. All the beneficiaries under the trust deed, Herman H. Kohlsaat, the original lessee, Edward A. Shedd, who claimed to have succeeded in equity to the rights of the lessee, and others, were parties to these bills. Answers and cross-bills were filed, the causes were consolidated, and a hearing resulted in a decree substantially in accordance with the prayer of the amended bill of Helen W. S. Johnson and Stewart Patterson, finding that there was a surrender of the lease by operation of law and that the Northern Trust Company held the title subject only to the terms and conditions of the deed of trust to it, and retaining jurisdiction of the cause for the purpose of an accounting. On appeal by Edward A. Shedd the Appellate Court for the First District reversed this decree and remanded the cause, with directions to dismiss the bill of Helen W. S. Johnson and Stewart Patterson and to enter a decree quieting the title of Shedd to the leasehold estate. Helen W. S. Johnson and Stewart Patterson have appealed from this judgment, the Appellate Court having certified that the cause involves questions of such importance that it should be passed upon by the Supreme Court.

John C. Patterson, one of the defendants who filed a cross-bill to which a demurrer was sustained, moved in the Appellate Court to dismiss the appeal on the ground that the decree was not final, and has assigned cross-error on the action of the court denying the motion. It was properly denied, for the decree disposes of all the substantial rights of the parties in the subject matter of the litigation and adjudicates the title to the property and right to its

possession, leaving nothing more to be done than to take an account.

The leasehold estate involved in this case has been the subject matter of litigation in three cases which have been prosecuted to final judgment in this court under the title of *Patterson* v. *Northern Trust Co.* 230 Ill. 334, 231 id. 22, and 238 id. 601. Those Reports contain a statement of all the facts in regard to the creation of the leasehold estate and the subsequent action of the parties interested in regard to that estate, on the basis of which the rights of the parties were adjudicated. In those cases the validity of the incorporation of the Merrimac Building Company, the supposed assignee of the leasehold estate, was not in issue, but about the time of the last decision the circuit court of Cook county rendered a judgment of ouster upon an information filed against the appellees, Edward A. Shedd and his associates in the supposed corporation, holding that no law existed for the formation of a corporation for the purposes for which the Merrimac Building Company purported to be organized, and that judgment was afterward affirmed by this court and the Supreme Court of the United States. (*People* v. *Shedd*, 241 Ill. 155; *Shedd* v. *Illinois*, 217 U. S. 597.) It is this judgment which has given rise to the present litigation. All questions in regard to the forfeiture of the leasehold estate and the validity of its assignment were decided in the previous cases. The appellants do not claim a forfeiture for non-payment of rent, but they insist that, the supposed assignee of the lease having no existence, the formal assignment vested no title but was void and of no effect. It is then argued that the lessee having completely abandoned the premises after the execution of the assignment and the owners of the fee having dealt with other persons in possession of the building as the only tenants, the acts of the parties were incompatible with the continued existence of the relation of land-

lord and tenant, and therefore a surrender of the lease resulted by operation of law.

The lease was made on May 1, 1893, by George M. Pullman and Watson Matthews, trustees, for the term of 102 years at a graduated rental, beginning with $47,350 a year, reaching $75,000 a year on May 1, 1906, and continuing at the latter rate for the remainder of the term. It provided for the remodeling of the building on the premises or the construction of a new building. On April 20, 1896, the certificate of the Secretary of State of the organization of the Merrimac Building Company was issued, and on April 30, 1896, an assignment of the leasehold estate was executed to that company. A new building was constructed in accordance with the terms of the lease, and on April 2, 1897, a second assignment of the lease was made to the Merrimac Building Company, and the lessors, the trustees, formally consented, in accordance with the terms of the lease, to both assignments. In December of that year the trustees conveyed the legal title in the fee to the beneficiaries, and they in turn conveyed the premises in trust to the Northern Trust Company, subject to the leasehold estate, which was recited to have been "duly assigned and conveyed by said lessee therein, said Herman H. Kohlsaat, to the Merrimac Building Company, a corporation organized and existing under the laws of the State of Illinois, which said Merrimac Building Company is now the owner of said leasehold estate." The Merrimac Building Company continued to be recognized and was dealt with in all respects as the assignee and owner of the leasehold estate by the trustee and all the beneficiaries until the judgment of ouster. Controversies arose between John C. Patterson, one of the beneficiaries, who owned a life estate in one-twelfth of the fee, and the Northern Trust Company, the trustee, in regard to the accounts of the trustee and its action in regard to the forfeiture of the lease for non-payment of rent and in other particulars, and the

litigation which has been referred to arose out of these controversies. Three of the other four beneficiaries, who owned three-fourths of the fee, (the appellant Helen W. S. Johnson being one of the three,) participated actively in the litigation in opposition to the claims of John C. Patteron, insisting that they were not tenable in law and that the continuance of the leasehold estate was beneficial to the trust estate. Edward A. Shedd had nothing to do with the attempted organization of the Merrimac Building Company and no interest in it or in the leasehold estate before 1905. His interest was acquired by the purchase of bonds issued by the Merrimac Building Company, as appears in the report of the first of the Patterson cases, as well as of the stock issued, and at the commencement of this suit he held assignments of all the supposed stock and bonds of that supposititious corporation. Kohlsaat made to Shedd and Albert M. Johnson a quit-claim deed of the leasehold estate on January 30, 1905, and Johnson afterwards quit-claimed his interest to Shedd. From 1905 Shedd acted as president and his brother as vice-president of the Merrimac Building Company until the decision of the Supreme Court of the United States, on May 31, 1910, affirming the judgment of ouster, and as such had possession and control of the building. Since that time Edward A. Shedd has continued in possession and new leases have been made in his name as an individual lessor.

It must be conceded that the attempted assignments to the Merrimac Building Company were ineffectual to convey the leasehold estate to it. Since there was no grantee capable of taking the estate, the instruments purporting to convey it were void and the title remained in Kohlsaat. The Merrimac Building Company acquired no title by virtue of Kohlsaat's deeds, but the stockholders who subscribed and paid for the stock did acquire an equitable interest in the property. (*Walker* v. *Taylor,* 252 Ill. 424.) This equitable interest arose, not out of the deeds, but out

of the payment of the money and the performance of the covenants which constituted the consideration for the lease. The construction of the building, which was the principal inducement and consideration for the execution of the lease by the lessors, was accomplished by means of the funds of the illegal association known as the Merrimac Building Company, obtained from the subscriptions to its supposed stock and the issue of its supposed bonds. It was not intended by the lessors, the lessee or the so-called stockholders that the money of the stockholders or their performance of the covenants of the lease should inure to the benefit of the lessors or the lessee except in accordance with the terms of the lease. An association of individuals for the purpose of purchasing the leasehold estate and constructing a building thereon was not illegal. Such a purpose is not prohibited by law or contrary to public policy. The association was illegal only because it took the form of an incorporation not authorized by law, but it was not criminal. The law denounced no such penalty against such association as forfeiture of the money or property invested in the enterprise. The law was satisfied when the individuals were removed from and ceased to usurp the franchise of being a corporation. The property which they had assembled in their associated capacity was still their property, in the possession and use of which a court of equity could and would protect them. Having paid for it they were in equity entitled to enjoy its use.

There was no surrender of the lease by operation of law. There certainly was no intention on the part of any person connected with the lease that it should be surrendered. The lease authorized the lessee to assign it, but not without the written consent of the lessors, which they were bound to give in conformity with certain prescribed conditions, but an assignment was expressly prohibited to any corporation not having the power and authority, under the laws of its organization and the laws of Illinois, to accept

such assignment. The attempted assignment was supposed by all concerned to comply with the conditions of the lease, but all now concede that it did not but was void. It had, therefore, no effect upon the rights of the parties. Kohlsaat still continued bound for the payment of the rent and the performance of the other covenants. He put the association known as the Merrimac Building Company in possession, and the managers of that association thereafter paid the rent and performed the covenants of the lease and were looked to by the lessor for that purpose. By the terms of the lease an assignment complying with its conditions would have released Kohlsaat, but this was not such an assignment. He remained liable, afterward as before, for the rent and the lease was not affected. Disregarding entirely, as we must, the deeds of Kohlsaat which purported to convey the leasehold to the Merrimac Building Company, we find that Kohlsaat placed certain persons in possession of the leasehold estate, who, not as volunteers but pursuant to an invalid agreement, performed at great expense the covenants of the lease. A surrender of a lease may take place by operation of law, but not every change of possession, though actual and continued, amounts to such surrender. The valid assignment of a lease by the lessee, consented to by the lessor, and the acceptance of rent from the assignee, do not, of themselves, constitute a surrender of the lease. (*Grommes* v. *St. Paul Trust Co.* 147 Ill. 634; *Barnes* v. *Northern Trust Co.* 169 id. 112.) A surrender is the yielding up of the estate to the landlord, so that the leasehold interest becomes extinct by mutual agreement between the parties. It is either in express words by which the lessee manifests his intention of yielding up his interest in the premises, or by operation of law, when the parties, without express surrender, do some act which implies that they have both agreed to consider the surrender as made. (*Beall* v. *White,* 94 U. S. 382.) Here the intention to discharge Kohlsaat was based upon an assignment in con-

formity with the lease. No such assignment had been made. The assignment was void, and as between the parties Kohlsaat remained bound by the lease although the persons who supposed themselves stockholders in the Merrimac Building Company were equitably entitled to the benefit of it. Their equity is based upon the good faith of the transaction. Their possession was acquired under the honest belief that the Merrimac Building Company had obtained title to the property. Their money was expended in the construction of the building on the premises and in complying with the covenants in the lease in the belief that they were adding to the value of their own property. It would be highly inequitable to hold that the acts of the parties, based upon what all regarded as a valid assignment of the lease, really worked the entire destruction of the leasehold estate, and thus to appropriate to others the property and money of the supposed stockholders, which has manifestly added to the permanent value of the estate and was invested without any suspicion of any infirmity in their title.

The certificates of stock issued in the name of the Merrimac Building Company were not evidence of the ownership of stock in a corporation but they indicate the proportionate contributions made to the resources of the association. The persons making such contributions were equitably interested in the property for the acquisition of which they were used. Their entire interest has become vested in the appellee Shedd. The leasehold estate, which remained in Kohlsaat in spite of his attempted conveyance, was conveyed by him on January 30, 1905, to Shedd and Johnson, and Johnson later conveyed his interest to Shedd. The attempted assignment of the lease by Kohlsaat was assented to by the lessors and the beneficiaries under the trust, and the right to forfeit the lease or object to its assignment has been waived. (*Webster* v. *Nichols,* 104 Ill. 160.) Shedd must be regarded as the owner of the lease-

hold estate, and the Appellate Court rightly held that his title should be quieted.

The appellee Shedd has assigned cross-errors on the failure of the Appellate Court to direct the superior court to decree to said appellee, besides costs, his reasonable expenses and attorneys' fees incurred in the cause, and his counsel has filed an extended argument asking us to set a precedent in practice based upon the trivial character of the litigation. So far as this question is concerned the triviality is not in the character of the litigation. The assignments of cross-errors are overruled.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*