## Charles Langendorf, Appellee, v. Louis Ritter and Samuel Schmidt, Appellants.

### Gen. No. 27,442.

1. LANDLORD AND TENANT—*validity and effect of agreement to terminate lease.* An agreement to terminate a lease under seal, coupled with delivery of possession to the landlord, is valid.

2. LANDLORD AND TENANT—*acts sufficient to constitute surrender of lease.* The surrender of a lease under seal was effected where the parties met, tore the signatures off both copies of the lease, had the word "canceled" written across them, left them in the possession of the landlord and orally agreed to a continuance of possession by the tenants as tenants from month to month for a period less than one year.

Langendorf v. Ritter et al., 225 Ill. App. 466.

3. FRAUDS, STATUTE OF—*when not applicable to lease.* An oral contract made in May for a tenancy from month to month until April 30 following was a contract to be performed within a year and not within the statute of frauds.

Appeal from the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed June 26, 1922. Rehearing denied July 10, 1922. *Certiorari* denied by Supreme Court (making opinion final).

JOHN W. MORSBACH, for appellants.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, for appellee; PERRY S. PATTERSON, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

This is an appeal by defendants from an adverse judgment in an action of forcible entry and detainer entered upon the verdict of a jury.

Defendants were lessees in two written leases from plaintiff demising premises 1343 and 1345 Milwaukee avenue, Chicago, respectively, executed January 20, 1920, for terms beginning May 1, 1920, and ending April 30, 1926. In May, 1921, actions of forcible detainer were commenced for possession of these premises, but the parties agreed that both cases should be consolidated and the verdict rendered should be applicable to both.

The lessees occupied the premises for about two years prior to May 1, 1920. There is a sharp conflict in the testimony concerning events respecting the leases for the subsequent period. Plaintiff claims that in April, 1920, defendants complained that business was bad and they were doubtful of their ability to pay the rent reserved in the leases. Plaintiff testified to a number of such conversations, the substance of which was a desire and request by defendants that the landlord release them from the leases and permit

defendants to occupy the premises on a month to month basis until April 30, 1921. Plaintiff says he finally acceded to these proposals and the parties met for the purpose of surrendering the written leases. They met in the stores of defendants and the leases were produced, the signatures thereto were torn off and the word "Canceled" was written across the face by plaintiff's daughter at his instance, and all the leases, both original and duplicate, were then delivered to plaintiff, who testified that defendant Ritter expressed gratification over the fact that the landlord had released defendants from the obligations thereunder. Defendants testified to another version of this transaction. They say that plaintiff was remodeling the building and that he requested defendants to let him take their leases in order to make a change therein showing that the stores were to be in the existing building as remodeled, instead of a new four-story concrete building which he had first proposed to construct. Weighing the variant stories, the jury properly could credit the version of the matter given by plaintiff.

Subsequently there were other talks between the parties, in which the landlord offered the stores to defendants at a reduced rental if they would remain after May 1, 1921, but they declined this. At one time the landlord told them that he had an opportunity to rent the stores to another party at a higher rent, and he was advised by defendant Ritter to make the lease to the other party as they, the defendants, were going to move at the end of the term, May 1, 1921. Plaintiff thereupon leased the premises to Obstfeld Brothers Company for a term beginning that date. There were several other conversations indicating that defendants understood and acquiesced in this new lease, and that they expected to move by that time. January, 1921, written notices were served upon defendants demanding possession May 1, 1921. Defendants

subsequently made statements, telling plaintiff not to worry, that they were going to move out as they had agreed. In February one of the defendants called upon Obstfeld to ascertain whether the premises could be sublet, and Obstfeld asked him to ascertain whether plaintiff would consent to this. Defendant Schmidt subsequently told Obstfeld that he had had a talk with plaintiff and that he could do nothing. There was a volume of testimony as to the conduct and statements of defendants, from which, together with the matters above referred to, the jury properly could conclude that the parties agreed to surrender the written leases and to make a new lease terminating April 30, 1921.

The validity of an agreement to terminate a lease under seal, coupled with delivery of possession to the landlord, has frequently been supported. *Williams v. Vanderbilt,* 145 Ill. 238. Defendants say that the mere removal of the signatures from the leases, marking the same as canceled and returning them to the landlord, is not sufficient to effect a surrender when the lessees continue to remain in possession. *Brewer v. National Union Bldg. Ass'n,* 166 Ill. 221. It does not follow, however, that there can be no surrender of an estate for years without a surrender of possession. At common law a particular estate for years might be ended as a result of the act of surrender in compliance with the intention with which the surrender was made. This, however, was changed in England by the provision of the statute of frauds that no leases, estates or interests for terms of years in lands should be surrendered unless it be by deed in writing signed by the parties surrendering or by act and operation of law. Some States in this country have similar statutes, but not Illinois. *Leavitt v. Stern,* 159 Ill. 526, holds that an executory contract under seal cannot be modified or varied by an unexecuted oral agreement, but it has been held that a lease may be abrogated, canceled and surrendered by an executed oral agreement and that

whether this has been done is a question of fact for a jury. *Alschuler v. Schiff*, 164 Ill. 298, also *Brewer v. National Union Bldg. Ass'n, supra.*

"It has been decided in this country that a surrender will result from the making of a new oral lease, provided it is valid as such, although the original lease was in writing or even under seal." Tiffany on Landlord and Tenant, p. 1324. The agreement to surrender a particular estate may be manifested by the acts and words of the parties, and this would be properly termed an express surrender rather than one by operation of law.

There is no legal inhibition in this State to the surrender of an estate for years, although evidenced by a sealed writing and at the same time making a new oral agreement, valid as such, for continued possession.

In Tiffany on Landlord and Tenant, p. 1322, the author suggests that: "It is more satisfactory, perhaps, to regard the various decisions on the subject as involving an application on the principle of estoppel, somewhat modified to suit what the courts may have considered the exigencies of the case."

The evidence tended to show that the parties met in May, 1920, to effect their agreement to surrender the written leases and to make an oral agreement for a tenancy from month to month, to expire April 30, 1921. This was a contract to be performed within one year and was not within our statute of frauds.

The question then is whether the jury properly could conclude that there was a surrender of the original written leases, and a new oral lease made expiring April 30, 1921. The record does not warrant a disturbance of the affirmative conclusion, and as there is no rule of law against the judgment, it is affirmed.

*Affirmed.*

DEVER and MATCHETT, JJ., concur.