(No. 22357.—

WILLIAM L. BRUNER *et al. vs.* THE ESTATE OF MILTON J. WOLFORD, Appellee.—(WILLIAM L. BRUNER, Appellant.)

*Opinion filed April 21, 1934—Rehearing petition stricken June 12, 1934, for violation of rule 44.*

Colfax T. Martin, and Arthur R. Hall, for appellant.

James C. Woodbury, and Gunn, Penwell & Lindley, for appellee.

Mr. Justice Stone delivered the opinion of the court:

Appellant, William Bruner, on May 2, 1929, filed in the probate court of Vermilion county a claim against the estate of Milton J. Wolford, deceased, in the sum of $2364.19. Four other persons filed claims in like amount. By stipulation it appears that the parties to the other claims agree to abide the decision of this court concerning the claim of Bruner. These five claims were each based on a

promissory note for $2000, all of which notes were secured by one real estate mortgage totaling $10,000. On January 21, 1931, the claims were amended in the probate court reducing the amounts to $1771.33 by reason of the foreclosure of this mortgage and sale of the property. On hearing in the probate court these claims were allowed. On appeal to the circuit court, where a hearing *de novo* was had, a motion of the appellee here to exclude the evidence and to deny the claim was allowed. The Appellate Court for the Third District affirmed the order of the circuit court. The cause is here on certificate of importance.

The facts out of which the controversy arises are these: One James H. Barkley, and Cynthia A., his wife, by their separate wills and codicils devised their estates each to the other for life with disposition thereafter. Barkley died in 1915 and his wife took all of his property in accordance with the terms of his will. Milton J. Wolford was appointed executor of Barkley's will. About a year thereafter Cynthia Barkley was adjudged to be an incompetent person and Wolford was appointed conservator for her. He served in this capacity until her death, in July, 1920. Her will nominated Wolford as executor and he was so appointed. He continued in that capacity until his discharge on April 19, 1924. Appellant and the other four claimants were among the heirs of the Barkleys and shared in the final distribution of their estate. In the codicil to each of the wills of the Barkleys it is provided concerning the distribution of the estate, "that my executor shall distribute, so far as he can, the notes and mortgages I may leave, without collecting the same, to the various heirs and legatees." During the lifetime of Cynthia A. Barkley, Wolford, while acting as her conservator, on March 10, 1920, made a loan of funds in which she had a life estate in the sum of $10,000, due in five years. On March 18, 1924, approximately one year before the notes and mortgage became due, Wolford filed in the probate court his

final account as executor of the estates of the Barkleys. This account showed that he had as balance on hand, in cash and securities, $50,069.84, of which $24,596.80 were securities. He announced that the estate was ready to be closed. The account was approved and he was ordered to distribute the balance immediately and to file a report of distribution. No one of the beneficiaries under the will had an interest sufficiently large to take the $10,000 note and mortgage, and the same not being due for a year, Wolford on March 25, 1924, renewed that mortgage for a term of five years and divided the principal into five notes of $2000 each. Interest accumulated and unpaid was represented by a sixth note amounting to something over $1100. Payment of this last note was guaranteed by Wolford and later paid by him. Wolford, in making final distribution, on March 31, 1924, sent one of these notes to each of the five claimants, including appellant, together with a check for $397.63, the latter being the balance due appellant on final distribution. With this note and check he sent a notice that on April 19, 1924, he would file his final report of distribution and ask to be discharged as executor. Typed on this notice was the following statement: "To prevent delay of fifteen months it was necessary to distribute part of the funds in kind; hence the note. Same is secured by first mortgage of record and is perfectly good. Mortgage to J. F. Geddes, trustee." This notice appears to have been signed "M. J. Wolford, executor," and beneath the typed notation as to the note appear the initials G. P. L., which the record shows are the initials of Gunn, Penwell & Lindley, attorneys for the executor. The record also shows that Wolford's name and initials of the attorneys were signed by one of the latter. No objection was filed to the final report of distribution, and on April 19, 1924, same was approved and the executor discharged. Appellant retained the note. No objection to it or the sufficiency of the security therefor was raised prior

to filing the claim herein. Interest was paid on the mortgage until 1927. The notes were not paid when due, and in October, 1929, the mortgage was foreclosed and a sale of the property for $4000 was had and approved. A deficiency decree was entered against the makers of the notes and mortgage for the balance.

Wolford died in 1928. Appellant's claim was first filed against the estate of Wolford about one month before the expiration of the year fixed by statute as the time in which claims may be filed against the estate of a decedent. It then recited that it was based on a promissory note, though no note was attached. When amended in January, 1931, it set out the credit thereon of the proportionate share of the amount realized on the sale of the property under the mortgage, leaving a balance of $1771.33 claimed. This amended claim described the note herein referred to, and recited that the mortgage loan, of which the note was a part, was made by Wolford without lawful authority, out of the funds belonging to the Barkleys, "the said loan having been made by the decedent, Milton J. Wolford, then acting in his official capacity as the duly qualified executor or administrator of the two Barkley estates aforesaid, which note was guaranteed in writing by said Milton J. Wolford or his lawfully authorized agent, and delivered by him in his official capacity to this claimant in lieu of money due said claimant as part of his distributive share in the two Barkley estates." The estate of Wolford was made party to the proceedings foreclosing the mortgage but was dismissed out of the case and no appeal was taken from the order of dismissal.

Numerous grounds are assigned as bases for the contention of appellant that the Appellate Court erred in affirming the circuit court. It is claimed that the estate of Wolford is liable for this claim because as executor of the estates, of James H. and Cynthia A. Barkley he had no authority to make the loan on March 10, 1920, which was

renewed March 25, 1924, and appellant's claim here is based on this action on the part of Wolford as executor. Counsel argue that in making this loan Wolford was guilty of a *devastavit* and hence became personally liable. Counsel for appellant also say that when Wolford renewed this mortgage he was acting as executor and was guilty of making a loan as executor, which he had no right to do. The record shows that the renewal of the mortgage was for the purpose of distribution of it in kind. It was a renewal of a loan not due and it is immaterial whether the loan was made as executor or conservator, since it was his duty to keep the funds invested.

Counsel for appellant further argue that Wolford committed *devastavit* in loaning these funds as conservator for Cynthia A. Barkley for the reason that the loan was not first approved by the court. The statute (Cahill's Stat. 1933, chap. 86, sec. 18,) provides concerning loans by a conservator, that "all loans shall be subject to the approval of the court." Section 10 of that act further provides for filing an account by the conservator, and that in so doing he shall set forth an itemized account of all notes, investments and the like, and shall produce and exhibit to the court the notes, bonds or investments so itemized and the court shall inspect the assets so exhibited. This act does not require that the conservator shall procure authority to make a loan before the loan is made, though such may be good judgment on his part, since if the loan be not approved by the court the conservator is personally liable therefor. The evidence shows that each year during the period of conservatorship, Wolford, as conservator, filed a report of his acts and doings as such and exhibited the notes and bonds or evidence of investment which he had in his possession, and that these reports were approved. We are of the opinion, therefore, that there was no *devastavit*.

Counsel next argue that the endorsement on the notice sent to him by Wolford of a hearing on the latter's final

report and application for discharge amounts, in law, to a guaranty, and as the property mortgaged did not turn out to be worth the amount of the mortgage, Wolford's estate is liable. Aside from the fact that this so-called guaranty was not signed by Wolford but by one of his attorneys, and there was no showing that his attorney was authorized to bind him as a guarantor, the language of the instrument does not constitute a guaranty. It is a rule respecting the construction of guaranties that the guarantor will be accorded the benefit of any doubt arising from the language of the contract of guaranty. Such language must be construed strictly and may not be extended by implication or otherwise beyond its precise terms. The statement that a note is good is a statement that the maker is solvent and able to pay and expresses nothing more. The rule is, that in order to charge as guarantor one making such a statement it is necessary to prove that the maker or the property was not financially "good" or the security insufficient for the amount at the time the statement with reference to the quality of the paper was made. (*Curtiss* v. *Smalman,* 114 Wend. (N. Y.) 231; *Cowls* v. *Peck,* 10 Atl. (Conn.) 569.) There is no such showing here. In this case the report of final distribution was approved without objection on the part of appellant, who accepted the note and raised no question about it for a period of more than five years. He had opportunity to learn whether the note and mortgage were "good" before the day on which hearing was had on the executor's report of final distribution. He could have objected had he chosen so to do, yet he did nothing of that kind. He cannot now claim reliance on the fiduciary relationship at the time the statement as to the quality of the note was made.

Counsel say, however, that Wolford, as executor, had no right to make distribution in kind and that the court did not direct him to make such a distribution. We have pointed out that the codicil of each of the wills of the

Barkleys directed that, so far as could be done, the notes and mortgage which the testator or testatrix left should be distributed without collecting the same. The $10,000 mortgage was a part of the estates of the testator and testatrix at the time of distribution. The loan was made during the lifetime of Cynthia A. Barkley. It came within the designation of notes left by her, and therefore comes within the direction to distribute in kind. This the executor would have been justified in doing without an order of court so to do.

Other arguments are made in the briefs, but under the view we take of the questions we have discussed it is not necessary to consider them, since the views expressed must result in the holding that appellant is without right to recover on his claim.

The Appellate Court did not err in affirming the order of the circuit court, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE FARTHING, dissenting.