Charles P. Peirce and Lucille K. Peirce, Plaintiffs-Appellees, v. Howard R. Conant, Defendant-Appellant.

Gen. No. 49,088.

First District, Third Division.

March 26, 1964.

Shaffer, Seelig, Mandel & Shapiro, and Edward W. Barrett and Robert A. Sprecher, all of Chicago, for appellant.

Raymond I. Suekoff, of Chicago (Avern B. Scolnik, of counsel), for appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an appeal from a summary judgment against the defendant as guarantor of the performance of lessees of the covenants of a lease. The judgment comprises defaults in the payment of rent, taxes and interest. The principal issue is whether the alleged defense of a surrender of the premises by the lessees and the acceptance thereof by the plaintiffs-lessors, thereby discharging the lessees from the performance of the obligations of the lease, is a genuine defense. Other issues involve the liability of the defendant for real estate taxes and interest, and the duty of the

lessors to use the lessees' security deposit of $7500.00 to offset the defaulted rent.

On March 15, 1960, the plaintiffs as lessors entered into a lease with the Craft House Plastics Corporation and Dorothy Flicek Industries, Inc., for ten years, commencing June 1, 1960, at a monthly rental of $2500. At the same time the defendant executed an instrument of guaranty in which he unconditionally guaranteed payment of the rental and the performance of all the covenants of the lease. The liability of the guarantor was limited to the first year of the lease term and, in any event, to $30,000. The lessees took possession and remained in such possession until sometime in April 1961, when, as it is charged in the complaint, they abandoned the premises and went into bankruptcy after all their personal property had been repossessed by a chattel mortgagee. Thereafter a new lease was made with the International Assemblix Corporation for a five-year term, commencing May 1, 1961, and ending April 30, 1966.

The complaint alleged defaults in the payment of rentals for March and April 1961 and in the payment of real estate taxes and interest. The defendant filed an answer denying abandonment of the premises by the lessees, setting up the defense of surrender and possession and that the defaults in rent were cured by the fact that the plaintiffs had negotiable securities in excess of $7500 (the security deposit of the lessees), which was more than sufficient to pay the installments of rent due for March and April 1961. Defendant also filed an "Affirmative Defense in Equity," in which he again alleges the defense of surrender of possession by lessees and the acceptance thereof by the plaintiffs, and further avers that the property had been relet to the International Assemblix Corporation for a period of five years, commencing May 1, 1961, and ending April 30, 1966; that at the time of this reletting, the

plaintiffs knew that the lessees were in bankruptcy; that the lessees' only obligation to the plaintiffs was for the rent for March and April 1961, and that the securities in the plaintiffs' possession were adequate to cover that default. It further averred that no payments were due the plaintiffs for general taxes because of the surrender of the premises and the acceptance thereof in April 1961; that at the time of surrender the general taxes for 1960 were not due and payable, and did not become so until June 1, 1961, when the first installment became due, and until September 1, 1961, when the second installment was due for payment. The defendant sought an affirmative decree, discharging him from any obligation under the guaranty, and ordering that the securities hereinbefore mentioned be sold and the first $5000 of the proceeds thereof applied to the rent for the months of March and April 1961, and the balance turned over to the bankruptcy trustee or the receiver of the lessees.

The plaintiffs moved to strike the answer of the defendant as presenting no defense at law, and moved that a summary judgment be entered and in support thereof filed the affidavits of the plaintiff Charles P. Peirce and his attorney John T. Moore, for the purpose of showing there was no genuine issue as to any material fact. The affidavit of Peirce alleged, insofar as it is pertinent to the present issues, that on April 20, 1961, involuntary petitions in bankruptcy were filed against the lessees; that about that time Robert D. Deutsch, the president of Dorothy Flicek Industries, Inc., one of the lessees, approached Peirce and suggested a new tenant for the premises; that Peirce informed him that a new lease would be considered only on the basis of mitigating damages, without terminating the liability of the original lessees or guarantors; that Deutsch was also a guarantor for a maximum liability of $30,000, but his obligation was

not limited to any particular year; that Deutsch on March 23, 1962, filed a voluntary petition in bankruptcy in the District Court of the United States and was adjudged a bankrupt; that Peirce referred the inquiry about a new lease to attorney Moore; that a five year lease was made with the applicant, International Assemblix Corporation, beginning May 1, 1961; that the security deposit is applicable at the election of the plaintiffs to any defaults during the entire ten year term and is not returnable until termination of the lease on May 31, 1970. The affiant then asked for a summary judgment for rents, taxes, interest and other items.

The material portions of the affidavit of Moore are to the effect that early in March 1961, the attorney for Deutsch and the lessees in the preparation of the lease, approached him about making a new lease to International Assemblix Corporation. In the negotiations for the lease to that corporation, Moore said he was making it clear that execution of the new lease would not and should not terminate the original lease and the obligation of the lessees thereunder; that at no time did the lessees surrender possession to the plaintiffs or to him as their attorney; that the lease to International was made only in mitigation of damages.

In opposition to the motion for summary judgment, Deutsch made an affidavit in which he admitted the financial difficulties of the original lessees and stated that in April 1961 at a meeting between himself and Peirce, he asked Peirce whether he would be willing to relet the premises if they were vacated by the tenant; that Peirce said he believed it would be necessary to get a new tenant on the premises if the tenant became bankrupt; that he realized the premises were going to be vacant; that he was going to have to take some action to relet the premises. Peirce further said

he hoped he would be able to save a broker's commission and that if there were any parties interested in obtaining a lease, they should take up the terms of the lease with his attorney; that Peirce never said to him that a new tenant would be considered only on the basis of mitigating damages, and that he specifically did not make the statement that a new lease would be considered only on the basis of mitigating damages without terminating the obligations of the original lessees or guarantors.

The affidavit of Kalman S. Lieberman, an attorney, was also submitted by the defendant in opposition to the motion for summary judgment. This affidavit stated that the affiant took the oral deposition of Peirce; that the deposition was taken prior to the time the answer to the complaint was filed and prior to the time the plaintiff and the plaintiff's attorney knew what defense was going to be made by the defendant; that at this deposition Peirce said he had a conversation with Deutsch with respect to the forming of the new Company, substantially as hereinbefore stated, except as to the following facts: that he did not remember Deutsch's asking whether he would agree to a ten-year term; that Deutsch "was trying to sell me on the idea of going along with him with all this new capital he was going to bring into the company and reorganize the whole thing"; and that was all that was said. The crucial part of the testimony is set forth at page 44 of the abstract, where attorney Lieberman asked the following questions:

"Mr. Lieberman:

Q. Mr. Peirce, you accepted the fact, did you not, that Dorothy Flicek and Craft House were in bankruptcy and that there was a surrender of the premises, and that it was necessary to get a new tenant?

A. Yes, I would say that.

. . .

Q. When you were advised of the surrender of the premises, was this by Mr. Deutsch telling you at that meeting in April, 1961, at your office, or had you gone past and seen some notice on the outside?

A. I had gone past and seen notice."

The purpose of this was to impeach Peirce's statement in his affidavit that there was no surrender of the premises and acceptance thereof by him.

■ Section 57 of the Civil Practice Act (Ill Rev Stats 1961, c 110, § 57) provides that a summary judgment should be rendered if the pleading and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." In determining if there is a genuine issue, inferences may be drawn from the facts which are not in dispute. If fair minded persons could draw different inferences from the facts, a triable issue exists. Tezak v. Cooper, 24 Ill App2d 356, 164 NE2d 493. It is only when the undisputed facts are susceptible of but a single inference does the issue become one of law. Halloran v. Belt Ry. Co. of Chicago, 25 Ill App2d 114, 166 NE2d 98.

The defendant argues that there exist genuine issues of material fact which require the summary judgment to be reversed. He points to the denial by Deutsch of the statement in Peirce's affidavit that Peirce informed him a new tenant or a new lease would be considered only on the basis of mitigation of damages and without termination of the obligation of the original lessees or guarantors. The defendant also points to the affidavit of Lieberman hereinbefore mentioned, in which, as defendant claims, Peirce acknowledged the surrender of the premises and the acceptance thereof.

He also argues that the whole nature of the conversation regarding the old lease and the signing of the new one with International Assemblix Corporation cries out for an interpretation that lessors had accepted the surrender of the two original corporate leases and looked solely to International Assemblix Corporation.

 Whether a surrender and acceptance actually occurred depends upon the intention of the parties. Alschuler v. Schiff, 164 Ill 298, 45 NE 424; Langdendorf v. Ritter, 225 Ill App 466. Surrender is the yielding up of an estate so that the leasehold interest becomes extinct by mutual agreement. Johnson v. Northern Trust Co., 265 Ill 263, 106 NE 814. The precedents with respect to surrender and acceptance cited by both parties involve quite different sets of fact and are of value to a solution of the issue before us only as they point up the extent to which courts have sustained such a defense. Here, the facts presented by the defendant's pleadings and the supporting affidavits can be construed as consistent with the plaintiff's theory of mitigation of damages, but the affidavit of Deutsch and the answer of Peirce, hereinbefore quoted, to the question asked him about surrender, and the whole series of negotiations and transactions, while by no means conclusive, taken together with the inferences favorable to the defendant which may be drawn therefrom, create an issue which cannot be resolved on a motion for summary judgment and should go to trial.

Upon remand the issue of the lessees' surrender and the lessors' acceptance will be more fully developed through direct testimony and cross-examination. We, of course, express no opinion as to whether there was an actual surrender or acceptance. However, as the trial court may determine that there has been no surrender and acceptance, we feel that we should state our conclusions with respect to two other points raised by the defendant—the proper allocation of the secur-

ity deposit by the lessors to the defaults of lessee, and the liability of the defendant for the real estate taxes and interest thereon.

▮ The lessees deposited marketable securities of the value of $7500 as security for the payment of the rental and the performance of the other terms, conditions and provisions of the lease. The defendant contends that these should be applied to cure the defaults by lessees in the payment of rents. The lease provides that at the date fixed for the termination thereof, or if the lease is terminated prior to the expiration of the term and the lessees should have no further liability thereunder, the deposit shall be returned to the lessees. It is the contention of the lessors that the guarantor has no interest or right to have this deposit applied to a curing of the defaults for which he is liable and that during the term of the lease it is in the sole discretion of the lessors to apply or not to apply the deposit to cure the lessees' defaults which have then occurred. It is the lessors' contention that the lease has not been terminated and does not expire until May 31, 1970. The lease with the International Assemblix Corporation runs until April 30, 1966. Thus there is a four-year period left before the expiration of the original lease. If, in the ultimate determination of the issues involved with respect to surrender and acceptance, it is decided that this lease does continue to exist, the security deposit remains with the lessors, to be applied on subsequent defaults. The total lease indebtedness exceeds $400,000, including taxes, and it is not unreasonable that the deposit of $7500 should be so construed. In any event, the language of the lease is clear in this respect.

▮ The defendant's point concerning his liability as guarantor for the unpaid real estate taxes poses a more difficult question. The total judgment was for $14,969.33. $5,000 of this amount represents the unpaid

rent for March and April 1961, at $2,500 per month, which the defendant acknowledges must be paid by him if it should be decided that the lease was not surrendered and accepted. The balance of the judgment is for real estate taxes from June 1, 1960, to April 30, 1961 (the period the lessees occupied the premises) and interest on the unpaid taxes to the date of the judgment. The defendant challenges this portion of the judgment.

The lease provides that:

"Lessee will pay, in addition to the rent above specified, all water rents, driveway fees, gas, electric light, power and other utility bills, and all other charges, taxes or special assessments levied or assessed against the demised premises during the term of this Lease. . . ."

The lease further provides:

"Lessee shall, promptly upon the issuance of bills therefor, pay all general real estate taxes and all special assessments and other levies and charges upon said premises during the entire term hereof. General real estate taxes for the first fractional calendar year of the term shall be prorated between the parties as of the date of the commencement of this Lease, on the basis of the actual taxes. General taxes for the last full calendar year of the term shall be paid when said taxes are ascertainable and general taxes for the last fractional year of the term shall be prorated on the basis of the amount ascertainable for the last full calendar year."

Because the guaranty states that the defendant ". . . unconditionally guarantees the payment of rental and the performance . . . of all the covenants, conditions, provisions and terms contained in that certain Lease

303

. . . ," the plaintiffs argue that he must assume every obligation of the lessees' which accrued during the period of his guaranty. The defendant, on the other hand, points out that his guaranty was qualified by the following provision:

> "It is expressly agreed that the liability of the undersigned under this Guaranty of Lease shall be limited to the first year of the Lease term and, in any event, to Thirty Thousand Dollars ($30,000)."

The defendant argues that the one year limitation expired on May 31, 1961, and, therefore, he is under no duty to pay the taxes in dispute, the first part of which did not become due until June 1, 1961, the day after the expiration of his guaranty. His position is that the lessees had until June 1, 1961, to pay their proportionate share of the first installment of 1960 taxes, until September 1, 1961, to pay the second installment and until May 1, 1962, to pay the 1961 taxes; that they were not in default until they failed to make these payments and hence no obligation arose under his guaranty because no default occurred during the year of its existence.

Support is lent to the defendant's position that he was under no duty to pay until a default actually occurred, by another provision of the guaranty which states that the lessors "upon Lessee's default" may proceed to enforce the guaranty by confessing judgment. Although the lease provides that tax bills shall be paid promptly upon being issued, real estate tax bills differ from many other bills in that they need not be paid when issued or received. Taxpayers do not become in default for nonpayment until a future date set by the County for payment. The lease did not provide that the bills were to be paid to the lessors; they were to be paid to the County Collector and were not

overdue until the dates set for their payment passed. The date set for payment controls the default and not the date of issuance.

A good case can be made for the positions of both parties, as the guaranty and the lease, considered together, are susceptible of two constructions. Extrinsic evidence, if available, might be of assistance in ascertaining the real intent of the parties, since this intent cannot be determined positively from the instruments themselves.

In the absence of such evidence, we must resolve the conflict by invoking the often repeated rules that a guarantor is to be accorded the benefit of any doubt which may arise from the language of the contract; that his undertaking is to be strictly construed; that his liability is not to be varied or extended beyond its precise terms by construction or implication, and that he is bound only to the extent and in the manner and under the circumstances pointed out in his obligation and no further. Bruner v. Wolford, 356 Ill 514, 191 NE 70; Castle v. Powell, 261 Ill App 132; Michaelsen v. Doonan, 259 Ill App 337; Schiff v. Continental Nat. Bank & Trust Co., 255 Ill App 333; Heberling Medicine & Extract Co. v. Smith, 201 Ill App 126. Under these rules of law we conclude that the guaranty was a limited guaranty, that no obligation devolved upon the defendant until the lessees defaulted in their own obligations, and that they did not default in the payment of taxes until the defendant's guaranty had expired.

The judgment is reversed and the cause is remanded with directions to vacate the judgment, and for such other and further proceedings as are consistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

305

McCORMICK, J., concurs.

SCHWARTZ, P. J., specially concurring:

I cannot agree with that portion of the court's opinion which deals with the liability of the defendant-guarantor for taxes. No genuine issue of fact is raised in that respect. The court upheld defendant's contention on what appears to me to be a highly technical construction of the instrument; that is, that the guaranty was against default on the part of the lessees and that there was no default in respect to taxes on May 31, 1961 because the bill for taxes for the prior year was not issued until the following day, June 1, 1961. The guarantee is that the defendant will pay the rent and perform *all the other covenants, conditions, provisions and terms contained in the lease.* His obligation is thus coextensive with that of the lessees for the first year of the term and to the limit of $30,000.

In addition to taxes, the lease provides that lessees will be liable for all water rents, driveway fees, gas, electric light, power and other utility charges. Indeed, lessees were obligated to pay all charges accruing against the premises (other than repairs to roof and exterior walls). It was designed to be a net lease and it explicitly provided as follows:

> "it being the intention of the parties that this shall be a net lease, entitling Lessor to full rentals without any expenses or deductions therefrom arising either out of Lessor's ownership, or of Lessee's use, of the demised premises."

If, in the payment of the various charges aforementioned, let us say, for water, gas or light, the lessees were given credit on a thirty or sixty day basis and that extended the time for payment beyond May 31, 1961, it would certainly be an unreasonable and unacceptable argument to contend that the cost of such

commodities and services did not become the obligation of the lessees within the year they were received or rendered.

Taxes are, in substance, the charge which the state and its political subdivisions—county, city and others, make for the costs of government, including police and fire protection, care of streets and alleys, sewage disposal, and a host of other facilities, all available to and, of course, in greater or lesser degree used by lessees during the period of guaranty. Real estate taxes are distinguishable to some extent from the cost of water, gas, light or other facilities furnished and necessary to the operation of a building, in that taxes for one year are not determined until some time the following year. Bills for these taxes are therefore not issued until after expiration of the year. The taxes in question, while for the prior year, were billed on June 1, 1961, that is, on the day following the expiration of the one year to which the guaranty was limited. The parties obviously understood the procedure with respect to taxes and provided in the lease that the general real estate taxes for the first fractional calendar year of the term were to be prorated between the parties as of the date of the commencement of the lease "on the basis of the actual taxes," and that general taxes for the last full calendar year of the term were to be paid when the taxes were ascertainable, and that "general taxes for the last fractional year of the term shall be prorated on the basis of the amount ascertainable for the last full calendar year." They thus recognized that not the date of billing, but the period in which the taxes accrued, determined the extent of liability. If the interpretation of the lease as now made by the court should ultimately become a final judgment, the lessors could not collect taxes for the last year of the term because such taxes would not be due and payable until after expiration of the entire term.

The language used in the lease is that the lessees will pay the taxes which are *levied* or assessed against the demised premises. "Levied" is defined as the formal and official action of a legislative body determining that a tax of a certain amount shall be imposed. People v. Pittsburgh, C. C. & St. L. R. Co., 316 Ill 410, 147 NE 492; 31 ILP, Revenue, Par 102. It is apparent that taxes are levied or assessed some time before the issuance of the tax bill. Statutory provisions governing the many local governmental bodies and municipal corporations which levy taxes against property in Cook County provide for the levying of each tax before a specific date in each year. That date is prior to March 31st. Ill Rev Stats, c 24, § 8–3–1, and c 120, § 637 (1963). Thus, even giving the instrument of guaranty a technical construction, the guarantor was liable as of that date.