George H. Anderson, Plaintiff-Appellee, v. Prab Conveyors, Inc., Defendant-Appellant.

Gen. No. 50,480.

First District, Third Division.

April 14, 1966.

James B. Sloan, of Chicago, for appellant.

Marshall Patner, of Chicago, for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The defendant appeals from a summary judgment entered for the plaintiff in his action to recover the commission on a sale made for the defendant.

The defendant, Prab Conveyors, Inc., manufacturers of conveyors and other industrial machinery, and the plaintiff, George H. Anderson, entered into a written contract in January 1958. The Prab company agreed to pay Anderson a graduated commission on sales procured by him (starting with 10% on the first $10,000, 9% on the next $15,000, etc.). He agreed to solicit potential customers within his territory, which included Cook County, and to prosecute all selling leads and inquiries to a final conclusion. The contract provided that it could be terminated with or without cause by either party upon 30 days' written notice. On October 3, 1960, Prab notified Anderson that it was terminating the contract.

Prior to this notification Anderson had been negotiating for the sale of Prab equipment to the Allis Chalmers Company for use in a new plant being built for that company in Harvey, Illinois, by the H. K. Ferguson Company of Cleveland, Ohio. Prab had submitted a bid for this business and quoted $12,795 for the material it proposed to furnish. The proposal was designated as PC–8048. Prab agreed that Anderson, who had initiated the sales transaction, should follow it up and gave him until December 31, 1960, to complete it. In the middle of December 1960 Prab, at the request of Anderson, extended the termination date on this particular account until February 15, 1961, and urged him to make every effort to get the order. In early January 1961, the purchasing agent for the Ferguson Company requested Prab to submit a proposal for additional equipment; Prab did so and quoted a total price of $23,984. The second proposal was numbered PC–8150. After this request was received and the proposal made, Prab wrote Anderson

226

on January 17, 1961, that the new request "confuses our extension on PC–8048" and that it would assume a $500 commission if it received the order.

As the negotiations neared a climax toward the end of January Prab continued to lean upon Anderson, and on January 31st the president of Prab telegraphed him from the company's home office in Roseville, Michigan, that a meeting had been arranged with the Ferguson purchasing agent for February 1, 1961. The parties met on that day in the Allis Chalmers plant in Harvey; the deal was consummated and the order signed. The order which was for $27,400 specifically incorporated the $23,984 proposal designated as PC–8150. The order also stated that proposal PC–8150 was based on specifications issued by Ferguson in September, October and December, 1960.

While they were in Harvey, Anderson discussed his commission with Peter Ruppe, the president of Prab, and the following day wrote Ruppe telling why he thought he was entitled to the full commission on the $23,984 portion of the purchase. Ruppe replied on February 7, 1961. He stated that Anderson's contract had come to an end on November 3, 1960, that only certain pending proposals were extended beyond November 3rd, and that other salesmen would have to be considered. Anderson pressed for payment and Ruppe replied on April 3rd. The gist of his reply was that the extensions of Anderson's contract were only for the purpose of closing the proposal known as PC–8048 and that this proposal was not part of the final Allis Chalmers order. The letter stated that Prab would pay Anderson nothing on the basis of proposal PC–8048.

Anderson's complaint, as amended, related the above facts and had attached thereto numerous exhibits including his contract with Prab, the Ferguson specifications, the Allis Chalmers purchase order and correspondence and telegrams bearing on his commission and the transaction in question. He requested judgment for $2,258.75.

227

Prab's answer, sworn to by Ruppe, admitted the accuracy of the exhibits but denied that the contract was extended from time to time and denied that Anderson was entitled to commission in the amount of $2,258.75 or any other amount.

Anderson moved for summary judgment. His motion stated that Prab's answer raised neither a question of fact nor any basis to deny its obligation to pay the sales commission under the contract as extended. Neither Anderson nor Prab filed affidavits and the motion was considered and granted on the complaint, the exhibits attached thereto and the answer. Judgment was entered against the defendant for $2,258.75.

The purpose of summary judgment procedure is to determine whether there is a genuine issue of material fact. If there is no genuine issue as to any material fact the moving party is entitled to summary judgment as a matter of law. If there is such an issue summary judgment must be denied. The right to a summary judgment must be free from doubt. Ill Rev Stats 1963, c 110, par 57; Zemel v. Chateau Royale Corp., 35 Ill App2d 313, 182 NE2d 383 (1962); Goodwin, Inc. v. Bowers, 24 Ill App2d 158, 164 NE2d 278 (1960).

Anderson's right to some compensation from Prab is free of all doubt. The pleadings conclusively establish this and the attorney representing Prab in this appeal admitted in oral argument that this is so. Their contract was in effect at the time Anderson contacted the prospective purchaser; the purchaser was located in Anderson's territory and the equipment was sold and installed in his territory; the contract was extended from the date of its expiration to February 15, 1961, so that he could bring about the sale; the sale was completed within this period; he initiated the sale, furthered it and participated in its development and success. The fact that the Prab proposals were for different amounts and bore different numbers does not defeat his right to com-

228

pensation for the contribution he made to the final sale. How the president of the defendant-company could state under oath that Anderson was not entitled to any commission whatsoever is beyond comprehension.

The amount of the commission is another question. Prab's answer was woefully deficient in raising factual issues or pleading factual averments. However, it was stated in the final paragraph of the answer, without supporting itemization of any kind, that the sales, engineering, service and follow-up work was performed in two or more different sales territories of the defendant, and that if a commission was due (which was again specifically denied) it would be subject to reduction pursuant to paragraph 5 of the contract.

An examination of paragraph 5 unearths the defense the defendant seems to have been driving at in the final paragraph of its answer. It is there stated that the normal commission to be paid a salesman would be influenced by various factors. Among these are the participation by more than one salesman in a sale, and the inclusion in a sale of articles not manufactured by the Prab company itself—such as motors and speed reducers. If more than one salesman took part in a sale 25% was to be paid to the salesman in whose territory the order was signed, 25% to the salesman in whose territory the equipment was installed and 50% to the salesman in whose territory and by whom the engineering and sales work was performed. If more than one salesman was involved in the engineering and sales work, the 50% was to be apportioned according to the amount of work done in obtaining the order. A commission of 5% was to be paid on articles not manufactured by the Prab company.

Although neither of these contract provisions is supported factually in the answer and although no affidavit was filed relating them to the facts of the case, a scrutiny of the complaint and exhibits reveals substantiating data. As to the first, there appears in the complaint and ex-

hibits the name of Gene L. Ruehle, Prab's representative in Cleveland, the home office of the Ferguson Company. Letters written to Anderson by Prab in November and December 1960 disclose that Ruehle was playing some part in the negotiations with Ferguson and Allis Chalmers. As to the second contractual provision, we find in the letter written by Anderson to Prab the day after the deal was closed in Harvey the suggestion that the full commission was subject to adjustment for a motor and a reducer.

██ ██ In determining whether summary judgment will lie and if there is a genuine issue of material fact, inferences may be drawn from the facts not in dispute. Peirce v. Conant, 47 Ill App2d 294, 198 NE2d 555 (1964). Reasonable inferences from the above undisputed facts are that Ruehle may be entitled to share in the commission and that the full commission sued for might be further diminished by a lesser fee to be paid on some of the articles sold. We, therefore, conclude from the plaintiff's own pleadings and the inferences to be drawn from them that the defendant's answer, despite its frailties, raised issues of fact which made uncertain Anderson's right to the amount of damages he claimed.

██ We also conclude from the contract, pleadings and uncontroverted exhibits that, after the proper reduction is made on the sales price for those articles not manufactured by Prab and after the commission on these articles and on the balance of the equipment is correctly computed, Anderson is entitled to 25% of the total commission because the order was signed in his territory; that he is entitled to another 25% because the equipment was installed in his territory and that he has a right to share, at least, in the remaining 50% because of the sales work he performed.

██ In reference to the division of 50% of the commission, the contract between the parties provides that in the event of a dispute over the apportionment of commis-

230

sions the company shall serve as arbitrator and that its determination shall be final and conclusive. This provision presupposes that the company will be fair in its decisions. In this case the company has been unfair. Anderson has received nothing and the company's president has stated under oath that he is owed nothing. If this matter were left up to the company he would get nothing. It would be unconscionable to compel Anderson to again submit his cause to an unfair tribunal and to those whose minds are closed against him. He had to go to court to obtain justice and the court must determine what his damages are.

The judgment of the Circuit Court is affirmed as to liability, reversed as to damages and the case is remanded for the determination of damages in a manner not inconsistent with the views herein expressed.

Affirmed in part, reversed in part and remanded with directions.

SULLIVAN, P. J. and SCHWARTZ, J., concur.